ROBERTS, Justice.
Haskell Davidson and Harold H. Cummings, the owners, contracted with S. S. Jacobs Company, a corporation, for the construction of a building. The contractor inadvertently misplaced the building on the lot by approximately twenty-five feet and, as a result of this error, voluntarily agreed to pay the owners $21,400, which settled all existing claims between them except the installation cost of a sump pump in connection with the discharge of sewage from the building. The owners contended that if the building had been placed on the lot where designated the sewage would flow by gravity; the contractor contended that even if the building had been erected where designated by the owners, conditions would have required the installation of the sump pump and, since in either event the pump would have been required, the owners should bear the cost. The parties agreed to submit to an engineer, as arbitrator, the sole question of whether or not the location of the building necessitated the installation of a sewage pump.
On July 12, 1955, the arbitrator filed his report, announcing a conclusion in favor of the owners and against the contractor. At the request of the contractor the arbitrator re-evaluated the situation and on August 8, 1955, adhered to his original position. Notwithstanding the fact that the arbitration agreement had provided that the decision with respect “to the pump shall be final and binding upon the parties”, the contractor still refused to pay. The contractor also denied that the pump cost was $2,552 and says that the cost was $1,700.
The owners instituted a suit in the Civil Court of Record of Duval County for the purpose of collecting the installation cost of the pump, in accordance with the arbitration award. The contractor’s answer alleged that the decision of the arbitrator was invalid and not binding upon him for that “it is based on information obtained from others by the delegation of the Arbitrator’s authority in those particulars wherein it was the duty of the Arbitrator to make personal investigation; further that the conclusions of the Arbitrator that gravity drainage could have been accomplished without the use of mechanical equipment to discharge the sewerage is based on erroneous facts in the following particulars, i. e., at the time plans were prepared for the construction of the building by the Defendant for the Plaintiffs and the beginning of the construction by the Defendant thereof, there was no trunk sewer extension along Roswell Road beyond the manhole which was located approximately 150 feet South on Roswell Road from the point of entry as indicated on the original drawings. Subsequently, this trunk sewer along Roswell Road was installed by the City of Atlanta in accordance with its master sewerage system and grades in accordance therewith. The extension was in *733 stalled at an elevation of approximately 3 feet under the existing road surface and not 6 feet as stated in the Arbitrator’s report. The contractor used cast iron pipe in accordance with the specifications, but even with the use of cast iron and even with a fall of 1/8 inch per foot, (if that were permitted by the City of Atlanta) a gravity flow sewer would have terminated below the sewer as installed by the City of Atlanta and required a power lift. That the building elevation was constructed as designed.” The presiding Judge of the Civil Court of Record, upon considering owners’ motion for a summary judgment, entered his order as follows:
“This cause came on to be heard, after due notice, and was argued by counsel for the respective parties and it .appearing to the Court that the conclusions expressed in exhibits C and D forming a portion of plaintiffs’ complaint are too indirect, indefinite and ambiguous to constitute a valid determination of the matter submitted for arbitration pursuant to exhibit B also forming a part of the complaint, and.it further appearing from the pleadings that a genuine dispute exists concerning a material issue of the controversy, namely: the exact elevation of the trunk sewer extension in Roswell Road to the closest point at which connection thereto could be made by the service line leading, from the building in question, and the Court being advised in the premises, upon consideration thereof, it is
“Ordered and Adjudged that plaintiffs’ motion for summary judgment be and it is hereby denied; and
“It is Further Ordered and Adjudged that defendant’s motion to dismiss plaintiffs’ complaint be and it is hereby granted, and plaintiffs are allowed thirty days in which to file amended complaint and defendant is hereby allowed fifteen days following service of copy of such amended complaint upon it within which to plead thereto as it may be advised.”
The owners having elected to stand on their original pleading, the Court entered its final judgment for the defendant and against the plaintiffs. Appeal was taken by the owners to the Circuit Court of Duval County as the appropriate reviewing court, and the judgment of the Civil Court of Record was by the Circuit Court affirmed.
A petition for certiorari has been filed in this court on the theory that there has been a departure from the essential requirements of the law, and we agree.
The arbitrator’s original and supplemental reports, designated “Exhibits C and D”, read as follows:
“This is to give you the report requested of this office relative to the sewer connection for the above mentioned building.
“We have contacted various parties for information relative to this job and find the following facts as pertains to the installation of the sewer.
“The length of the sewer run from the end of the sewer within the building to the street connection is 378 feet. The sewer in Roswell Road in front of the building is approximately 6 feet below the street surface level. The building floor line proper is 1.3 feet below the street elevation at Roswell Road. With the above conditions, I would like to give the following information.
“The City of Atlanta prefers a 1/4 inch fall per foot of run on a gravity sewer line and this fall at the length of run of 378 feet requires a fall of 7.-875 feet. Mr. Fitzpatrick gave the following elevations, and we have coordinated the elevations and data accord- • ing to this information: building assumed elevation — -100.0; street eleva- ' tion over the sewer — 101.3. The sewer in the street being approximately 6 *734 feet deep gives an elevation of the sewer of 95.3. The highest beginning flow elevation of the sewer within the building would be 12 inches lower than the finished floor elevation, elevation 99.0. The difference between the sewer invert in Roswell Road and the beginning flow line elevation within the building is 99.0 minus 95.3 equalling 3.7 feet. This difference in elevation of the sewer and beginning elevation of the sewer line does not provide sufficient difference to allow gravity flow into the sewer. The fall at YÍ inch Per foot is 7.875 feet, the fall at % inch is 3.937, or 0.237 feet lower than the invert of the street sewer at minimum permissible fall. (The % inch fall is permitted by the city when cast iron pipe is used throughout from the first ■fixture connection to the sewer, and since this is the type of material indicated by the drawings it would be per-missable to use the % inch fall.) The building floor line elevation as presently constructed (1.3 feet below street) even the % inch fall would not permit gravity drainage.
“Reviewing the possibility of a gravity sewer in relation to contract requirements, I would like to advise that the contract drawings had datum based apparently on geodetic survey data giving a flow elevation of 977.0, the elevation at the street 977.5, the sewer being approximately 6 feet deep gives the sewer elevation of 971.5. As mentioned above, the use of % inch fall with the cast iron pipe specified by the contract drawings would be permissible, and therefore the following data: floor level elevation 977.0, beginning house sewer elevation 976.0 (1 foot below finish floor), fall for length of sewer from beginning connection to the street sewer 3.937 feet giving an invert elevation at the sewer connection at Roswell Road of 972.063. The sewer elevation at the point of the above mentioned connection is 971.5, which would permit the connection of the house sewer to the Roswell Road sewer by gravity if the sewer was run at % inch fall per foot.
“The conditions evidenced above, the slight difference in the house sewer elevation and the street sewer elevation (being approximately 6 inches), it is readily seen how a slight variation in the floor line elevation of the building would necessitate the use of mechanical equipment to discharge the sewage from the building whereas the original design could have made use of gravity drainage.
* * * * * *
“Again in regards to the ability to obtain a gravity sewer from your store on Roswell Road, in Atlanta, I wish to advise that a gravity sewer was possible. A further re-check was made by this office in regards to information relayed to us after our original letter and my original viewpoint that sewer connections by use of gravity means was substantiated on our recheck. There is a sewer on Roswell Road running north with the manhole approximately Yio of a mile from the property on which the store is located.”
A careful reading of the arbitrator’s report of July 12, 1955, shows clearly that it was based on considerable hearsay evidence and approximations of distances under circumstances where even a few inches became important. It uses such language as "the sewer on Roswell Road in front of the building is approximately 6 feet below the street surface level.” (Italics supplied.) It also indicates that important information had been secured from various parties whose identity was not disclosed, with no detailed explanation as to the part of the important information which had been obtained in such irresponsible manner. The controlling question was obviously whether or not the city sewer was deep enough under the street to allow for *735 gravity drainage had the building been properly located. It therefore became the responsibility of the arbitrator to determine by measurement or from some responsible acceptable source the exact depth of the city sewer. Further, the arbitrator’s report of July 12, 1955, was not in the clear, explanatory language that one might expect to come from an engineer. The report states “it is readily seen how a slight variation in the floor line elevation of the building would necessitate the use of mechanical equipment” (italics supplied) and it is therefore obvious that a slight variation in the street sewer line would have had the same result. Since the location of the sewer was approximated, we must agree with the contractor that in its present form the report is improper and we therefore hold that it amounts to no arbitration at all. For that reason, the lower court was correct in holding that the report did not constitute a basis for the entry of a judgment by the owners against the contractor. Cf. Maw v. Kitzman, 55 N.D. 463, 214 N.W. 273; Ball-Thrash Co. v. McCormick, 172 N.C. 677, 90 S.E. 916; 6 C.J.S., Arbitration and Award, § 84 a, p. 231.
We are, however, then confronted with a situation where the owners have a claim which may, or may not be valid but which they are entitled to have heard either in a proper judicial forum or by a complete arbitration. To deny the'm a valid arbitration and then deny them the right to litigate in court would, in our opinion, amount to a denial of due process. For that reason, it was error for the lower court to enter final judgment against the owners without making some provision for their right to further pursue their claim.
For the reasons stated, certiorari is granted and the order complained of is quashed with directions that the cause be remanded to the agreed arbitrator or some other arbitrator mutually agreed upon to the end that all parties may have a full and complete and accurate and just arbitration by which they must, under their agréement, be bound.
It is so ordered.
THOMAS, Acting C. J., and THORNAL and BUFORD, JJ., concur..