93 So.2d 727 (1957)
Phyllis K. HULLUM and Calvin Hullum, her husband, Appellants
v.
BRE-LEW CORPORATION, a Florida corporation, et al., Appellees.
Supreme Court of Florida, Division B.
March 22, 1957.
Douglas D. Reed, Miami, for appellants.
L.J. Cushman, Miami, for appellees.
*728 DREW, Justice.
This is an appeal from an order of the trial court dismissing an amended complaint to impress and foreclose an equitable lien against real estate.
The salient facts around which this litigation revolves as set forth in the amended complaint are as follows:
Chester G. Breese and Ruth B. Breese (hereinafter called Mr. and Mrs. Breese) were the owners of a parcel of real estate located in Dade County, Florida, known as Lots 2, 4, 6 and 8 of Elmira, a subdivision within said county. Mr. and Mrs. Breese and Don Lewis and Helen Lewis, his wife (hereinafter called Mr. and Mrs. Lewis), entered into an agreement to construct and operate a motel on said real estate. In order to provide financing for such construction, Mr. and Mrs. Breese borrowed $25,000 from Borton Investment Company and secured said indebtedness by a first mortgage on the above real estate. This first mortgage shall be hereafter referred to as the Borton mortgage. A little while after the Borton mortgage was executed Mr. and Mrs. Breese borrowed $3,159.69 from their daughter, Phyllis Hullum, and secured said loan by a second mortgage on the premises. Financial difficulties were encountered in the development of the project and the holders of the Borton mortgage threatened foreclosure in the latter part of 1951. Faced with this situation, Mr. Breese prevailed upon his daughter, Mrs. Hullum, and upon a third party to advance sufficient funds to pay off the sum owing on the Borton mortgage at that time in order to prevent a foreclosure. Such funds were advanced and the Borton mortgage, upon which there was then due an amount in excess of $15,000, was paid off and satisfied. Mr. Breese promised adequate security to his daughter and the third party for these loans and, according to the record, an attorney was employed to prepare the necessary papers but according to the complaint and unknown to Mrs. Hullum and the third party, Mr. and Mrs. Breese had conveyed the land prior thereto to Bre-Lew Corporation, of which Mr. Breese was president, Mrs. Breese, vice-president and Mr. Lewis, secretary and resident agent. Shortly after funds were advanced to pay off the Borton mortgage, Mr. Breese signed a memorandum which he sent to his agent which directed the agent to hold the Borton mortgage, which had been satisfied, with the understanding that it was to be assigned to Mrs. Hullum and the third party who had joined Mrs. Hullum in furnishing the funds and that said mortgage would be held by them until suitable security was provided. The security, however, was never provided and the third party who had joined with Mrs. Hullum in furnishing a substantial part of the funds to pay off the Borton mortgage threatened to sue for the recovery of his funds sometime in December, 1952 whereupon Mr. Breese again persuaded his daughter to pay off the third party in order to protect the motel and the business venture even though at this time the property had been conveyed by Mr. Breese to the corporation, a fact which was unknown to the daughter. It is alleged that Mr. Breese continued to assure his daughter that adequate security in the form of the assigned first mortgage or a new one would be provided or was provided to protect her on the advances she had made. Sometime later and on to-wit: February 9, 1953, the corporation, still in financial difficulties, secured a loan from a Mr. Jordan and executed a mortgage to Mr. Jordan to secure the payment of another loan. The holder of this mortgage is not a party to this litigation and the plaintiffs admit that their claim is subordinate and junior to the rights of this mortgagee. March 1, 1953, Bre-Lew Corporation executed a note signed by Mr. Breese, as president, to his daughter for $6,000 mentioning a first mortgage which was to be security for the payment of the obligation evidenced by the note and on March 4, 1953, Mr. and Mrs. Breese issued another note to their daughter's husband, Mr. Hullum, for $2,500. Mrs. Hullum continued *729 in her efforts to obtain the promised security on the obligation and on March 6, 1953, Bre-Lew Corporation executed and delivered to Mrs. Hullum an $8,000 note signed by Mr. Breese, president, and Mr. Lewis, secretary. This note was an attempt to recapitulate the debts then owing to the daughter but apparently was not accurate as to amount and the $8,000 note refers to the fact that a first mortgage is to be executed to secure the sum involved but said mortgage was never so executed. Some four months later, on to-wit: June 6, 1953, and with the foregoing notes outstanding representing the indebtedness of the corporation, Bre-Lew Corporation executed a note for $9,000 secured by a mortgage on the real estate to Mr. and Mrs. Lewis which was shortly thereafter assigned to Lloyd Averett Grace, who was the accountant for the corporation. It is this latter mortgage which the complaint alleges to be fraudulent and void or at least entirely subordinate to the claims of the plaintiffs. After alleging the foregoing facts the complaint then alleges:
"Plaintiffs aver that in equity and good conscience, by reason and on account of the facts and circumstances as herein related, they are subrogated to all of the rights and interest of the Mortgagee in, and to said Borton Mortgage aforesaid, and have by virtue of same, acquired an equitable lien upon the premises hereinabove described, enforceable as against said premises to the extent of all of the moneys so advanced by the Plaintiffs, as related, for the express purpose of paying off and satisfying the indebtednesses so secured by said Borton Mortgage, aforesaid, and liquidating same, which said equitable lien is evidenced by the Memorandum, copy of which is hereto exhibited, as aforesaid, and the Defendants are estopped from denying the same.
"That none of the moneys advanced by the Plaintiffs, as aforesaid, have been repaid, and the interest provided for has not been paid, semi-annually, as the same matured and became due and payable under the provisions of said notes aforesaid, and that by reason and on account of said nonpayment, said notes are now in default.
"Plaintiffs aver that by reason and on account of the foregoing and by reason and on account of the confidential relationship of father and daughter, the Plaintiffs were by the Defendants, and their actions, lulled into a sense of security, trusting the father of the Plaintiff Phyllis K. Hullum, the said Defendant Chester G. Breese, who continuously has asserted to and assured the Plaintiffs that everything would be done properly insofar as these matters and circumstances related above are concerned, to the end that the Plaintiffs would be fully and completely protected with adequate security as herein related; that, by reason and on account of the foregoing, all to the complete knowledge of all of the Defendants, the Plaintiffs aver that the indebtednesses due them by reason of the advances made, as aforesaid, all of said moneys so advanced having gone into the property and premises hereinabove described, the sums evidenced thereby by said advances, together with interest thereon at the legal rate, reasonable solicitor's fees in and about this cause and the costs incident hereto, including abstracting, expended by the Plaintiffs, constitute an equitable lien upon said premises described, inferior in dignity only to the Mortgage given to Berta Malone Jordan, which said equitable lien they, the Plaintiffs are herein entitled to have impressed and foreclosed as against said real property hereinabove described, and as against each, every and all of the Defendants."
Reverting back to the mortgage of $9,000 executed June 6, 1953, by the corporation to Mr. and Mrs. Lewis and thereafter assigned to Mr. Grace, the complaint charges that said mortgage was fraudulent as to plaintiffs because it was made at a time when the corporation was insolvent and with an intent to secure one of its officers or directors, to-wit: the Lewis', interest in direct violation of the provisions of Section *730 608.55, Florida Statutes, F.S.A. and that at the time of the execution thereof all of the officers and directors, including the accountant to whom the mortgage was assigned, had full knowledge of plaintiffs' indebtedness and of the purpose for which the funds evidenced by the same were advanced. The complaint further alleged that the assignment to Mr. Grace was void and fraudulent and was a subterfuge conceived and designed solely for the purpose of defrauding the plaintiffs and that the assignee thereof was acting "solely and only as the agent of said defendants with full knowledge" of the facts above related and that Mr. Grace was then and still is the accountant for the defendant corporation and for a long time had been employed in that capacity, and was a party to the fraudulent and iniquitous conspiracy to defraud the plaintiffs.
The trial court was clearly in error in dismissing the amended complaint.
It is argued by the appellees here that the cause of action set forth in the complaint is unenforceable under the Statute of Frauds, Section 725.01, Florida Statutes 1955, F.S.A., and the Conveyancing Statute, Section 689.01, Florida Statutes 1955, F.S.A. We summarily dispose of this contention with the observation that neither of these statutes has any application whatever in this case. An equitable lien is not an estate or property in the land itself nor a possessory right of any character. It is a charge or encumbrance upon the land "so that the very thing itself may be proceeded against in an equitable action, and either sold or sequestered under a judicial decree, and its proceeds in the one case, or its rents and profits in the other, applied upon the demand of the creditor in whose favor the lien exists." Jones v. Carpenter, 1925, 90 Fla. 407, 106 So. 127, 129, 43 A.L.R. 1409. The very nature of an equitable lien and of the facts and circumstances which would authorize a court of equity to impose and enforce such a lien upon lands demonstrates the total inapplicability of the two foregoing statutes in this case.
As we understand the allegations of the complaint, all of the sums advanced by the plaintiffs were either for the purpose of paying off existing encumbrances on the property or other indebtednesses against it or in the construction of improvements on it and in each event with the understanding and oral representations that the property would be the security for the loans. The allegations of the complaint, if true, show a preconceived, definite and calculated plan on the part of Mr. and Mrs. Lewis and Mr. and Mrs. Breese to avoid doing the very thing that they had agreed to do and on the basis of which they had obtained these funds from the plaintiffs. Fundamental concepts of equity would require that these defendants be required to do that which in equity and good conscience they should have done voluntarily. On the subject of equitable liens generally it is said in 33 Am.Jur., page 427, paragraph 18:
"An equitable lien is a right, not recognized at law, to have a fund or specific property, or its proceeds, applied in whole or in part to the payment of a particular debt or class of debts. It is not an estate or property in the thing itself, nor is it a right to recover the thing, that is, it is not a right which may be the basis of a possessory action, but it is merely a charge upon it. Such a lien may be created by an express contract which shows an intention to charge some particular property with a debt or obligation, or it may arise by implication from the relations and dealings of the parties whose interests are involved. Likewise, a lien may be created by an equitable assignment of a contract, debt or fund. In fact, if a transaction resolves itself into a security, whatever may be its form and whatever name the parties may choose to give it, it is in equity a lien. Possession by the lienor of the thing sought to be *731 charged is not essential to the existence of an equitable lien, which differs in this respect from a common-law lien.
"The doctrine of equitable liens has been liberally extended in modern times to give effect to the intention of the parties to create specific charges, and to facilitate mercantile transactions. Such a lien cannot, however, be based only upon moral obligations, but must find a basis in established equitable principles."
The attempt of the corporation to prefer one of its stockholders and directors by the devious but rather obvious plan alleged in the complaint is a direct violation of the provisions of Section 608.55, Florida Statutes 1955, F.S.A., the pertinent portions of which read as follows:
"No corporation which shall have refused to pay any of its notes or other obligations when due, nor any of its officers or directors, shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash. No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid."
While this statute is clearly applicable to the situation presented here, it is doubtful that it would be a necessary condition precedent to the granting of relief to the plaintiffs in this case under the broad principles of equity.
We hold that the allegations of the complaint if established by competent evidence are sufficient to entitle plaintiffs to an equitable lien on the subject land under the principles announced in Jones v. Carpenter, supra, and the authorities therein recited, and that the lower court erred in sustaining the motion to dismiss the complaint.
Reversed with directions for further proceedings not inconsistent with the views herein expressed.
TERRELL, C.J., and HOBSON and O'CONNELL, JJ., concur.