117 So.2d 747 (1960)
Arthur S. DEWING and Frances R. Dewing, His Wife, Appellants,
v.
C.A. DAVIS, Trading and Doing Business As Davis Grove Service, Appellee.
No. 1007.
District Court of Appeal of Florida. Second District.
February 5, 1960.
*748 Hull, Landis, Graham & French, Deland, for appellants.
Rodgers & Kirkland, Orlando, for appellee.
KANNER, Judge.
The suit about which this appeal is concerned was brought to establish and enforce a lien for labor and services against lands owned by the appellant, Arthur S. Dewing. The chancellor, finding that the appellants were indebted to the appellee in the sum of $6,886.25, charged the property with an equitable lien. In this appeal, the Dewings cite as error the chancellor's adjudicating of an equitable lien, his holdings that Mrs. Dewing is also an owner of the property and that the Dewings are indebted to the appellee.
The Dewings moved for summary decree, proffering as basis the pleadings and the deposition of Davis, the appellee. This motion was denied. Petition for certiorari filed by them in the Supreme Court seeking review of this interlocutory order was also denied. Dewing v. Davis, Fla. 1957, 97 So.2d 307. The issue set forth through the briefs in that proceeding related to a statutory lien, with and without privity, and to the applicability of an equitable lien.
The record discloses that a contract on a standard form entitled "Receipt for Deposit-Offer *749 to Purchase and Contract for Sale" was entered into on November 7, 1955, for sale of Gardena Farms, the property here involved, containing approximately 485 acres of citrus grove, by Arthur S. Dewing to R.P. Swetman and J.B. Chamberlain. The contract provided that the existing crop of fruit should be the property of the purchasers, that proceeds from the sale of any fruit should be placed in escrow and credited to the purchasers upon closing, and that the purchasers would attain possession at the time of closing. The contract was never consummated.
Swetman, in November, 1955, went into possession of Gardena Farms, not under the written contract, but under a series of oral agreements with Arthur S. Dewing. It was understood that Swetman was to be in possession and in charge of the property, that he was to care for it, sell the fruit, and perform other duties appropriate to grove ownership. Swetman engaged the appellee, Davis, a professional grove caretaker, to perform the work of the grove. He also consulted with the operator of a grove advisory service concerning the planning of work and care of the grove.
Pursuant to arrangements made with Swetman, Davis assumed care of the grove in the latter part of November. The first work done by Davis was early in December, 1955, and the last on April 5, 1956. He began this service without communication with Dewing; he submitted his statements to Swetman and was never paid; he knew the proceeds from fruit sold would be put in escrow; and Swetman told him that he, Swetman, was in complete charge of the property. The work performed was essential and beneficial to the grove, consisting of many different items, such as grubbing palmettoes, hauling brush, fertilizing, discing, spraying, pruning, unbanking and hoeing young trees, all of which constituted normal grove care except for the grubbing of palmettoes and removal of underbrush. Additionally, Davis arranged for the sale of the entire crop of fruit, estimated in value at from fifty to sixty to seventy thousand dollars. There was testimony that the work was well done and that the prices charged by Davis were reasonable.
As to knowledge by Dewing concerning what transpired in connection with the grove, Swetman testified that he consulted with Dewing with reference to the work to be done on the grove and discussed this subject with him on December 8, 1955, at Winter Park, Florida, and later in Boston, Massachusetts, where he went over with Dewing the recommendations proffered by the advisory service consultant as to the grove. He further testified that Dewing said that Swetman was the man to supply the attention needed by the grove, and that on December 8, Dewing was satisfied with the manner in which the grove was being handled and with the plans for its continued care.
Dewing was aware that Davis was doing the grove work. For a time prior to assumption of possession by Swetman, Dewing had in his employ a certain worker whom he insisted should remain on the grove until the sale transaction was closed so that he could obtain reports from the worker as to what took place in connection with the grove. This employee's salary was paid during a part of the time by Dewing and a part of the time by Swetman, and he appears to have worked simultaneously for both parties. Dewing, upon meeting Davis at the grove at one time, inquired as to his authority to do the work and was told by Davis that Swetman had employed him to do it. To this, Dewing replied, "Well, Mr. Swetman is the man. You do whatever he tells you to do." At another time Davis saw Dewing on the property while work was in progress but had no conversation with him.
The contract failed of consummation and Dewing regained possession. Of the fruit which Davis had sold, about 13,000 boxes of valencia oranges were picked after Dewing regained possession; and at *750 the time this suit was filed, the funds realized from sale of the fruit and placed in escrow had been paid to Dewing by court decree resulting from other litigation involving Dewing, Swetman, and the buyer of the fruit.
Claim of lien by Davis against Gardena Farms was filed in May, 1956. This claim itemized services and labor performed to the extent of $6,886.25. Copy of the claim of lien was served on Dewing by mail on May 16, 1956, and he admitted receipt of it in his answer to the complaint. No claim was made by Davis for his services in effecting the sale of the fruit crop.
The Dewings did not testify. The chancellor in his decree found that Arthur S. Dewing and his wife, Frances R. Dewing, are owners of the land; that they entered into a contract for sale of the property to Swetman; that Swetman went into possession and began cultivation of the grove; that Arthur S. Dewing permitted and authorized the possession and management by Swetman; that pursuant to such authorization and with knowledge of Dewing, Swetman contracted with Davis to furnish certain grove caretaking services; and that the services performed were for the care, cultivation, and improvement of the property. Davis, therefore, was held to be entitled to an equitable lien against the property, and judgment was entered for the amount found to be due plus interest and costs.
Although the chancellor adjudged an equitable lien against the grove property, the complaint indicates that a statutory lien was sought. The appellee urges that the evidence and the legal authorities sustain a right either to an equitable lien or a statutory lien. In opposition, the appellants assert that they did not in any way create the obligation and are not indebted.
Since the chancellor adjudged an equitable lien, we shall examine and consider the law relating to the right to charge an equitable lien as it may apply to the circumstances of this case.
One who has performed services or furnished materials in improving real property is not limited remedially by the Mechanics' Lien Law, F.S.A. § 84.01 et seq., but may instead establish an equitable lien on the property. Palmer v. Edwards, Fla. 1951, 51 So.2d 495; and Green v. Putnam, Fla. 1957, 93 So.2d 378. The principle thus enunciated relating to the Mechanics' Lien Law logically may apply as well to section 85.04, Florida Statutes, F.S.A., so that persons who perform farm or grove labor are not restricted to the statutory lien remedy provided by that section, but may under proper circumstances proceed to establish an equitable lien.
Equitable liens may arise, by operation of law from the conduct of the parties, from a variety of transactions to which equity will cause them to attach. Craven v. Hartley, 1931, 102 Fla. 282, 135 So. 899. A landmark case on equitable liens in Florida is that of Jones v. Carpenter, 1925, 90 Fla. 407, 106 So. 127, 129, 43 A.L.R. 1409. In that case the Florida Supreme Court said:
"From the foregoing it is seen that equitable liens arise from two sources, viz.: (1) A written contract which shows an intention to charge some particular property with a debt or obligation; (2) is declared by a court of equity out of general consideration of right and justice as applied to the relations of the parties and the circumstances of their dealings in the particular case. Jones on Liens, supra; 17 R.C.L. 605, supra; 25 Cyc. 667. Equitable liens are necessarily based on the doctrine of estoppel and usually arise in cases of expenditures by one joint owner on real or other property or in cases where a party innocently and in good faith makes improvements on the property of another. These last two, however, are by no means the only instances in which they may arise."
*751 The principle as regards the right of a court of equity to declare an equitable lien out of a general consideration of right and justice as applied to the relations of the parties and the circumstances of their dealings has been reiterated in many of our cases. See Tremont Company v. Paasche, Fla. 1955, 81 So.2d 489; Ross v. Gerung, Fla. 1954, 69 So.2d 650; Sonneman v. Tuszynski, 1939, 139 Fla. 824, 191 So. 18, and Foster v. Thornton, 1937, 131 Fla. 277, 179 So. 882. It has been recognized that this is not a definite standard but one appropriate for a court of equity. Insurance Company of Texas v. Rainey, Fla. 1956, 86 So.2d 447. Where a debt exists and there is no express or implied agreement for security but where it is equitable that certain specific property should stand as security for payment of the debt, then a chancery court, upon application of the creditor, will decree that the property involved must stand, through the medium of an equitable lien, as security for the debt. Industrial Supply Corp. v. Lee, Fla. 1950, 48 So.2d 285.
Under a general consideration of right and justice as applied to the circumstances and the relations of the parties, our consensus is that Davis was entitled to an equitable lien. Not only was the work of a type protected under statutory policy, but there are the additional considerations heretofore related as to Dewing's placing of Swetman in possession to handle work of the grove, his keeping of his own workman on the grove, his vetoing of some of the plans for grove care, his telling Davis to do as Swetman instructed, his recognition of the sale of fruit made by Davis and his receipt of the proceeds, and his status as beneficiary of the work done by Davis. Dewing was at least twice apprised of the plans for care of the grove. He consented to and acquiesced in the work being performed and was the recipient of large proceeds of fruit picked after he had regained possession, sale of which had been initiated and consummated by Davis, for which services Davis made no claim. He obtained also the escrowed funds from fruit picked while Swetman was in possession, during which period of time Davis performed the work. From the services rendered by Davis, plainly Dewing is attempting to reap benefits which accrued both after he regained possession as well as while Swetman was in possession, some of the work having been in the nature of periodic care, while other services wrought results of a more permanent nature. Out of right and justice Dewing should not be permitted to escape liability for the services Davis performed. The chancellor, therefore, was correct in charging an equitable lien against Gardena Farms.
It is inescapably apparent that the facts of the case at bar readily distinguish it from its companion case, Dewing v. Nelson & Company, Inc., 117 So.2d 744. Moreover, we further observe that the facts and circumstances of the present case related to farm labor performed on a grove, constituting a service entirely different from the commodity involved in the companion case. That case involved merely a commercial transaction, entered into openly and without mistake as to the true state of the grove title, for sale of fertilizer, a product not recognized by a protective statutory policy affording a lien against land.
We cite as error that portion of the decree holding that the property was owned by both Arthur S. Dewing and his wife and that there was joint liability as between the husband and wife. The property involved was owned by Arthur S. Dewing, as was alleged in the complaint and admitted in the answer. Additionally, the chancellor's provision for the entry of a deficiency decree is questioned, and the appellee interposes no objection to the position thus taken by the appellants.
Because of our conclusion, we deem it unnecessary to deal with the phase presented by appellee that the facts sustain a right to a statutory lien. The decree is affirmed *752 except with reference to Frances R. Dewing and to the provision for entry of a deficiency decree.
Affirmed in part and reversed in part.
ALLEN, C.J., and GERALD, LYNN, A.J., concur.