KANNER, Judge.
An equitable lien was adjudicated by the chancellor against certain grove property known as Gardena Farms, of which Arthur S. Dewing is owner in fee simple. His decree specified that Arthur S. Dewing and his wife, Frances R. Dewing, are obligated to the appellee, Nelson & Company, Inc., for $7,687.76 worth of fertilizer purchased from that company and used upon the subject grove property. The Dewings in this appeal are asserting that the court was in error in its decree charging an equitable lien against the property, holding that Mrs. Dewing is also an owner of the property, and finding that the Dewings are indebted to the appellee company.
On November 7, 1955, Arthur S. Dewing entered into a contract with Robert P. Swetman and J. B. Chamberlain for sale of Gardena Farms to these two, this contract being drawn on a standard form entitled “Receipt for Deposit-Offer to Purchase and Contract for Sale.” The price stated was certain, the earnest money was paid, and the closing date was set. Among its provisions, the contract entitled the buyers to all the fruit then on the trees, with proceeds from the sale of the fruit to be placed in escrow pending the closing of the contract and credited to the buyers on the purchase price. The contract specifically provided that the buyers be given possession on the date of closing; and although this contract was never consummated, Swetman did go into possession under a series of oral agreements with Dew-ing. Fruit from the grove was sold, and the proceeds deposited in escrow pursuant to the terms of the contract as part of the purchase price later were acquired by Dewing.
Testimony reveals that the appellee fertilizer company had submitted the lowest bid for fertilizer specified under recommendation of a consultant engaged by Swetman, the bid having been requested by one C. A. Davis whom Swetman had placed in charge of the grove. In late December or early January, Swetman and the son of the caretaker, Davis, went to the office of the appellee company and! there submitted the unconsummated contract for sale through which Swetman and Chamberlain had agreed to purchase the grove property. The company had previously known that Dewing was the owner of Gardena Farms, having sold fertilizer to him in the past. After examining the contract, and being aware of the considerable crop of fruit then existing on the grove, the representative of the company assumed that either Swetman or the owner would take care of the grove; and the order for the fertilizer was drawn by the company.
It was also shown that Swetman was billed through eleven invoices totaling $7,-687.76 for fertilizer delivered at succes *746 sive times from January 9 through January 14, 1956. The company at the outset looked to Swetman for payment. After receiving request for payment of the bill, Swetman, in the latter part of March, 1956, went to the office of the company and announced that he was having trouble with the purchase of the grove and, upon request of the company’s secretary-treasurer, signed a promissory note agreeing to pay the amount due. This note was procured as evidence of the obligation and not in payment of it. Swetman mailed the bills to Dewing when the deal failed of consummation ; and the company mailed Dew-ing an itemized statement in March or April, continuing to bill him for a time on the first of every succeeding month. Correspondence between Dewing and the company in June, July, and August, 1956, indicated that Dewing at first showed willingness to pay for the fertilizer if it was of the correct analysis. There is evidence that the fertilizer analysis used was good and that it was comparable in price to fertilizer used on the grove previously.
This suit was instituted after Dewing regained possession of the property. The chancellor found that both Arthur S. Dew-ing and his wife are owners of the property, that they entered into a contract for sale of the lands to Swetman, that Swetman went into possession and provided for cultivation and fertilization of the grove, that Dewing permitted and authorized the possession and management by Swetman, that purchase of the fertilizer by Swetman from the company was pursuant to this authorization and with knowledge of Dewing, and that the fertilizer was used in the care, cultivation, and improvement of the grove. The court therefore concluded, as a matter of equity, that Swetman and the Dewings were indebted to the company; and the land involved was held subject to an equitable lien.
The appellee’s suit is wholly predicated on the claim to an equitable lien. It has not sought to fasten a lien upon the crop. We here interpolate that in order to acquire a crop lien, the claimant must meet certain specifics. When one makes an advance of wares or merchandise to aid in farming so as to create and fasten a lien upon the crops, the person procuring the advance is required to give the one making the advance an instrument of writing consenting to the lien, and this lien shall be recorded in the county where such business of farming is conducted. Section 85.22, Florida Statutes, F.S.A. Also a crop mortgage lien may be created pursuant to the provisions of Chapter 700, Florida Statutes, F.S.A. Through statutory enactment in Florida, no basis is created for a lien against land of a person procuring wares or merchandise for farming. The Legislature, as regards liens for advances in goods and merchandise for farming purposes, limited such liens to the crops and did not broaden them to apply to lands as is done under other statutory provisions for the furnishing of farm labor, section 85.04, Florida Statutes, F.S.A., or for the furnishing of labor and materials under Chapter 84, Florida Statutes, F.S.A., the Mechanics’ Lien Law.
 The company was fully aware that Dewing was the owner of the property, that he had sold it under contract to Swet-man and Chamberlain; and the company was fully cognizant of the contract provisions. This was a normal transaction for the sale of fertilizer to be utilized in cultivating a grove. As we view it, a principle which applies here has been enunciated in the case of Johns v. Gillian, 1938, 134 Fla. 575, 184 So. 140, 144-145:
“The rule as to when an equitable lien arises by implication for improvements or benefits to property is set out as follows in 37 C.J. 321, Liens, Sec. 26:
“ ‘An equitable lien on the property benefited has been held to arise where a person in good faith, and under a mistake as to the condition of the title, makes improvements, renders services, *747 or incurs expenses that are permanently beneficial to another’s property. But there is no such lien where the expenditures are made with knowledge of the real state of the title; nor will such a lien arise where there is an adequate remedy at law.’ ”
It is true that an equitable lien may grow out of a written contract which evidences an intention to charge some particular property with a debt or obligation, and also an equitable lien may be adjudicated by a court of equity upon general consideration of right and justice as applied to the relations of the parties and the circumstances of their dealings. Ross v. Gerung, Fla. 1954, 69 So.2d 650; Johnson v. Craig, 1947, 158 Fla. 254, 28 So.2d 696; and Jones v. Carpenter, 1925, 90 Fla. 407, 106 So. 127, 43 A.L.R. 1409. However, an equitable lien cannot be rooted upon moral obligations alone, but such a lien must be based upon established principles of equity. Hullum v. Bre-Lew Corporation, Fla. 1957, 93 So.2d 727.
We do not see that there is any basis in recognized equitable principles for support of the lien adjudicated below. Even if the company had sold directly to Dewing under the stated circumstances, no basis would have been furnished for an equitable lien against his land; and as has been previously indicated, there was a failure to comply with statutory provisions for effecting a crop lien. For us to hold under the present situation that the company is entitled to an equitable lien would be, in effect, the equivalent of holding that the ordinary sale of fertilizer to be used' on land for farming purposes would create a right to an equitable lien against the land. The remedy here is at law.
The court below was further -in error in his holding that Frances R. Dewing is an owner of the property here involved, as is conceded by the fertilizer company. It appears that the sale of the property was by Arthur S; Dewing, the sole 'owner, to Robert P. Swetman ánd J. B. Chamberlain,instead of by Arthur S. Dewing and Frances R. Dewing as stated in the decree.
We shall not dismiss the cause; but without comment as to the merits of appellee’s claim, we direct that it be transferred to the law side, there to proceed under the established rules of practice and' procedure. Rule 1.39(a), Florida Rules of Civil’Procedure, 30 F.S.A.
The cause is reversed for proceedings not inconsistent with this opinion.
ALLEN, C. J., and GERALD, LYNN, A. J., concur.