PIERCE, Judge.
This case involves separate appeals taken by Shirley Hughey, appellant herein, who was one of the defendants in the Court below, from two orders entered on July 8, 1965, in a cause therein pending wherein appellee Stevmier, Inc., a Florida corporation, was plaintiff and Greco-Davis Contracting Company, Inc., a Florida corporation, was principal defendant and numerous other persons, including Shirley Hughey, were nominal defendants.
Stevmier, Inc., hereinafter called Stev-mier, alleged in its complaint as amended that it was in the construction business and was general contractor under a construction contract with a non-profit Florida corporation, known for convenience as Nalcrest, pursuant to which Stevmier was in process of building for Nalcrest a 500-unit retirement housing village near Lake Wales, Florida; that Stevmier’had entered into 'a sub-contract 'with Greco-Davis' Contracting Company, • Inc., whereby as subcontractor Greco-Davis was^ to furnish materials and perform certain services in connection with the Nalcrest development; that from the time the sub-contract was executed on August 2, 1962, and continuing progressively thereafter, Greco-Davis failed to maintain the schedule of work progress on the project as established in the sub-contract, that the quality of its work was frequently below specifications called for therein and was in fact delaying other sub-contractors in maintaining their work schedules, that on several occasions, both orally and in writing, Stev-mier gave cautionary warnings to Greco-Davis of said deficiencies in performance; and that finally, on February 11, 1963, while a considerable amount of work contemplated in the sub-contract remained to be performed, Greco-Davis breached the contract by removing its workmen and equipment from the construction premises; that although notified of such breach by Stevmier, Greco-Davis refused to resume operations under the sub-contract, necessitating Stevmier taking over completion of the project to the irreparable loss and damage to Stevmier.
It was further alleged that, on the date suit was filed, April 8, 1963, twelve separate materialmen’s claims of lien had been filed with the local Circuit Clerk, the largest of which was that of Shirley Hughey in the amount of $12,228.00, covering rental use of several items of heavy-duty construction equipment; that Stevmier had at all times complied with the terms of the subcontract and stood ready to make payments thereunder to Greco-Davis and also the suppliers and materialmen for work performed and materials furnished on the project, but could not do so because it was unable to ascertain the exact amounts owing to said lienors and other suppliers expected to file claims; that the total amount of such unpaid claims was expected to greatly exceed what Stevmier owed Greco-Davis *412 under the sub-contract, and that it had been unable to determine the validity, the bona fides, or the priority of the various liens; that Stevmier had paid Greco-Davis almost $70,000.00 upon the strength of periodical sworn affidavits relating to payment for materials and services furnished, but which affidavits failed to reflect substantial amounts of money due various materialmen and suppliers; and that unless the Circuit Court took jurisdiction of the subject matter, Stevmier would be unable to determine the validity and priority of the lienors’ respective claims, would be subject to a multiplicity of suits, would be subjected to duplicitous claims, and would otherwise be jeopardized in following through under its original construction contract with Nal-crest. It was prayed that Greco-Davis be required to render a true account of all unpaid claims, that the Court give judgment against Greco-Davis for all damages sustained by Stevmier, and that the Court determine the amounts, validity, and, priority of the various liens, including Shirley Hughey’s.
On May 7, 1963, Stevmier filed petition for declaratory and other relief, adopting the allegations of the original complaint and alleging that liens filed as of that date against the Nalcrest property amounted to $66,783.86, which amount Stevmier had deposited with the Circuit Clerk in order to transfer the liens into cash and thereby release the liens from the property as permitted by law. Shirley Hughey’s lien was, of course, among them. Said petition made further allegations of wrong-doing by Greco-Davis and prayed for further relief not involving Shirley Hughey, except that the Court construe the provisions of the Florida Statutes as applied to the transfer and removal of claims of lien and any duplicates thereof.
Three days later, on May 10, 1963, Stev-mier filed further amended complaint, re-averring the allegations of its previous complaints, made further charges against Greco-Davis, and prayed again, among other things, that the Court determine the aggregate amount and priority of all liens' filed and specify those claims which were bona fide and valid and that judgment be awarded against Greco-Davis for all damages sustained by Stevmier.
On June 11, 1963, Shirley Hughey, one of the several defendants who were in the case only because they had recorded their claims of lien and as to whom no relief was asked except that they prove and establish the validity of their claims and the exact amounts thereof and priority, filed her motion to dismiss the complaint as amended. On August 30, 1963, the Circuit Judge entered order denying the motion to dismiss and granting a motion of Stevmier to add additional lienors as parties defendant.
On September 13, 1963, Shirley Hughey filed her notice of appeal to this Court from the interlocutory order aforesaid of August 30, 1963. On December 26, 1963, this Court, on motion of Stevmier, dismissed the interlocutory appeal of Shirley Hughey.
On May 13, 1965, Stevmier filed in the trial Court separate motions for a decree pro confesso against Shirley Hughey, and for discharge of her lien and return of the cash deposit therefor with the Clerk. In support of both motions Stevmier recited the pertinent record facts aforesaid, and also that Shirley Hughey had never filed or served any other defensive pleadings in the cause or commenced any action to enforce her claim of lien, even since the appeal dismissal some sixteen months earlier.
On July 8, 1965, the Circuit Judge entered order granting Stevmier’s said motion for decree pro confesso and decreeing that “the complaint be taken as confessed by the defendant, Shirley Hughey, and that said cause do now proceed ex parte as to her.” On the same date, separate order was entered discharging the claim of lien filed by Shirley Hughey, and directing the Circuit Clerk to return to Stevmier the amount deposited to transfer the lien to cash. *413 These are the two orders from which Shirley Hughey has taken separate appeals, and which are now before this Court for determination.
In urging that this Court reverse the Circuit Judge, Shirley Hughey argues here that the Circujt Judge was in error in holding that her lien had expired by passage of time without commencing an action to enforce it, and in not exercising his discretion to thereafter permit her to file a responsive pleading setting up her claim. We find such contentions to be untenable and uphold the able Circuit Judge in the entry of the orders complained of.
The Florida Legislature in 1963 passed a comprehensive Mechanic’s Lien law, repealing in the process most of the old provisions. But all of the critical happenings in the instant case occurred while the previous laws were in effect, and both parties are agreed here that the case is governed by provisions of Florida Statutes, 1961, F.S.A.
The statutes then in existence, pertinent to this case, are Sections 84.21, 84.23(3) and 84.24, all in Florida Statutes, 1961, F.S.A. They are respectively as follows :
“84.21 Duration of lien. No lien provided by this chapter shall continue for a longer period than one year after the claim of lien has been filed unless within that time an action to enforce the lien is commenced in a court of competent jurisdiction and a notice of the penden-cy of such action is filed with the clerk of the circuit court of the county in which the claim of lien is filed, containing the names of the parties to the action, the object of the action, a description of the real property and improvements affected thereby, and the time of filing the claim of lien. If a lienor having a subsisting lien is made a party defendant in an action to enforce another lien provided by this chapter, and the plaintiff or such defendant has filed a notice of the pen-dency of the action within the time prescribed in this section for bringing action to enforce such defendant’s lien, the lien of such defendant is thereby continued. Such action shall be deemed an action to enforce the lien of such defendant lienor. The failure to file a notice of pendency of actions shall not abate the action as to any person liable for the payment of the debt specified in the claim of lien and the action may be prosecuted to judgment against such person. Where a lien is transferred to a cash deposit or to a bond as provided in § 84.24 a notice of pendency of action need not be filed."
“84.23 Discharge of lien. A lien provided by-this chapter may be discharged by any of the following methods:
* * * * * -if
(3) By failure to begin an action to enforce the lien zvithin one year from the time of filing the claim of lieiij unless an action be begun within the same period to foreclose a mortgage or to enforce another lien provided by this chapter upon the same real property and a notice of pendency of such action is filed.”
“84.24 Transfer of lien to security substituted for real property. A lien provided by this chapter may be transferred from real property to other security by either of the following methods:
(1) By depositing with the clerk of the circuit court of the county in whose office the claim of lien is filed, at any time before an action is commenced to enforce the lien, a sum of money equal to the amount demanded in such claim of lien plus an amount estimated by said clerk of the circuit court as sufficient to cover interest to the date of settlement of the demand and the cost of prosecuting such action; or after such action is commenced by a payment into court, after at least five days’ notice to all parties to the action, of such sum of money as in the judgment of the court or a judge thereof will be sufficient to pay any judgment or decree which may be recovered in such action.
*414 Upon any such payment the clerk of the circuit court of the county shall forthwith enter upon the mechanics’ lien docket against the claim of lien for the transfer of which such moneys were paid, the words ‘Transferred to deposit’ and such lien shall thenceforth until satisfied, dismissed or discharged be secured by such deposit. A deposit of money made as provided in this section shall be paid to lienors under the judgment or decree of the court in accordance with their respective rights. Any excess of the deposit over the aggregate amount of such judgments or decrees, or if liens are otherwise satisfied, the full amount of such deposit shall be repaid to the party making the deposit, or to his successor in title thereto. All deposits of money made as provided in this section shall be considered as paid into court and shall be subject to the provisions of law relative to the payment of money into court and the disposition of such money by the order of the court. An order for the payment of such money to the persons entitled thereto may be made by any circuit court having jurisdiction of the parties. If application for such order is made by a lienor it shall be on notice to the depositor or his successor in title; if made by the depositor or his successor in title, then on notice to the lienor.” (Emphasis supplied.)
It will be observed that Section 84.21 fixes the period of one year as the life of such a lien. And it is significant that one year is the maximum period only in the event some legal action is not taken during that time, either on the part of the lienor to enforce the claim or else the lienor is made a defendant in an action to enforce another similar lien. In either of such latter events, a notice of pendency of such action must be filed with the Circuit Clerk with whom the claim in question was previously filed. The last sentence of said Section is of special significance, wherein such notice of pendency of action is hot required when- the lien has been transferred to a cash deposit, as here.
Section 84.23 provides several alternative methods by which such a claim of lien may be discharged, one of which is a legal action relating to that claim, either by the lienor being plaintiff to enforce, or defendant to defend, as set forth in Section 84.21 supra.
Section 84.24 prescribes a procedure for releasing the lien against the real property involved by depositing cash with the Circuit Clerk in such amount as would protect the lienor. In such event the Circuit Clerk enters upon the mechanics’ lien docket book where the lien is recorded the words “Transferred to deposit”, whereupon “such lien shall thenceforth until satisfied, dismissed or discharged be secured by such deposit”. And the latter part of said Section 84.24 gives to the Court direct supervision of such deposit money, the same as other funds in custodia legis, and affirmatively provides that the lienor can apply to the Court for an order of disbursement upon notice to the depositor.
But none of the foregoing Sections makes it the duty of, or obligatory upon, the depositor or the lienor or the owner of the real property in question, within the one year period, to take any action, either to enforce or cancel the lien or to disburse the cash deposit, as the case may be. The Statutes merely confer reciprocal rights; they impose no duty to act. The only legal effect is that if no action is taken within the year’s time bearing directly upon the claim of lien in question it becomes discharged by operation of law, and if a cash deposit has been substituted for the lien, the cash is subject to being disbursed back to the depositor. It seems clear to us that the rationale of the cited Statutes is that, where the provision for making a cash deposit under Section 84.24 is utilized, the claim of the lienor is transferred from the lien on the real property to the cash deposit itself.
*415 Appellant argues that the statutes of Florida governing limitation of actions generally, and the principles enunciated in the cases arising under such general limitations, should apply here. The fallacy of such argument is that here we are dealing with a specific limitation of action involving the enforcement of a specific right. The law is well settled in this State that, in such cases, the specific limitation, provided in the same Section as the specific right, is exclusive.
This principle is explicit, as laid down by the Supreme Court in Bowery v. Babbit, 1930, 99 Fla. 1151, 128 So. 801, a case involving the limitation of action applying to a mechanics’ lien under Florida Statutes, as follows (text 128 So. 806) :
“Where proceedings to enforce the lien are not instituted within the time, if any, prescribed by the statute creating the lien, the right to enforce the lien will be barred or the lien itself discharged, (citing cases and other authorities).
******
In handing down the opinions which we have just referred to, this court doubtless had in mind that line of decisions which holds that where a statute confers a right and expressly fixes the period within which suit to enforce the right must be brought, such period is treated as the essence of the right to maintain the action, and * * * the plaintiff * * * has the burden of affirmatively showing that his suit was commenced within the period provided. L[ouisville] & N.R. Co. v. Chamblee, 171 Ala. 188, 54 So. 681, Ann.Cas. 1913A, 977; Martin v. Pittsburg Ry[s], Co., 227 Pa. 18, 75 A. 837, 26 L.R. A., (N.S.) 1221, 19 Ann.Cas. 818; 17 R.C.L. 985, 1004. In other words, when the right and the remedy are created by the same statute, the limitations of the remedy are treated as limitations of the right” (Emphasis supplied.)
See also the cases of Kimbrell v. Fink, Fla.1955, 78 So.2d 96, text 98; Blanton v. Young, Fla.1955, 80 So.2d 351, and Rood Company, Inc. v. Luber, Fla.1956, 91 So.2d 629, all decided by the Supreme Court of Florida and all relating to limitation of actions involving mechanics’ and material-mens’ liens. The principle was also applied by analogy in Conner v. Alderman, Fla.App.1964, 159 So.2d 890.
By not commencing some action to enforce her lien within one year from the time she filed and recorded it, Shirley Hughey suffered her lien to be discharged by operation of law.
For the reasons stated, the orders appealed from are hereby affirmed.
Affirmed.
ALLEN, C. J., and HODGES, JOHN G., Associate Judge, concur.