78 So.2d 96 (1955)
LeRoy KIMBRELL, Betty Jo Kimbrell, E.S. Thornton and Pennie Mae Thornton, Appellants,
v.
Charles E. FINK, doing business as Allied Construction Company, Appellee.
Supreme Court of Florida. Special Division B.
February 16, 1955.
C.B. Peeler, Jacksonville, for appellants.
Robert E. Hucker, Jacksonville, for appellee.
DREW, Justice.
This is an appeal from a final decree foreclosing a lien upon certain real estate and ordering a sale thereof for the purpose of satisfying the lien.
The facts out of which this controversy arose are as follows:
*97 E.S. Thornton and Pennie Mae Thornton, his wife, owned a tract of land consisting of about 19 acres in Duval County. Some time prior to 1951 Betty Jo Kimbrell, the daughter of the Thorntons, and her husband LeRoy Kimbrell, built a small house on a portion of the 19 acres and were residing therein on the 27th of August, 1951, when an agent of the Allied Construction Company approached them with reference to making certain improvements thereon. As a result of these negotiations a contract was entered into between the parties in the sum of $650. At the same time the Kimbrells executed a note in the sum of $747.37 to the construction company, payable in thirty-six installments of $20.77 each to pay for such construction. In due course the work was completed. Five payments were made on the note by the Kimbrells.
Because of an unfavorable credit report on LeRoy Kimbrell shortly after the work was commenced and ostensibly for the purpose of protecting itself in the event the Kimbrells failed to meet the obligation evidenced by the note, and within the time allowed by the statute, the construction company filed a claim of lien against said property in the public records of Duval County setting forth therein that the last items of labor or material was performed and furnished on the 7th day of September, 1951.
After five payments were made, payments ceased on the note. So far as the record shows, the appellee, construction company, took no steps to enforce the obligation until September 1, 1953, when it filed its original complaint in the lower court for the purpose of declaring and foreclosing an equitable lien on the lands. The amended complaint on which the case was tried alleged the facts which are narrated above and in addition thereto averred that at the time the contract was entered into between the construction company and the Kimbrells, the Kimbrells falsely represented that they, the Kimbrells, were the owners of the property. The complaint further alleged that the Kimbrells were in the possession of said property with the knowledge, acquiescence and consent of the Thorntons and that the Thorntons knew that the Kimbrells had falsely represented to the construction company that they were owners of the land and that the construction company relied upon said representation in entering into said contract and performing said work. The complaint attempts to state a case to establish an equitable lien in the following language:
"4. That all of the labor and services performed and furnished by the petitioner as aforesaid was done with the knowledge, acquiescense and consent of the defendants, E.S. Thornton and Pennie Mae Thornton, and the said E.S. Thornton and Pennie Mae Thornton knew that said work was being done as aforesaid to the house and premises owned by the said E.S. Thornton and Pennie Mae Thornton, and the said E.S. Thornton and Pennie Mae Thornton failed and refused to advise the petitioner and withheld from the petitioner that they, the said E.S. Thornton and Pennie Mae Thornton, were the true legal owners of said premises upon which the petitioner was furnishing labor, services, and materials, all to the improvement of the said property owned by the said E.S. Thornton and Pennie Mae Thornton.
"5. That by the reason of the facts herein set forth, the defendants, E.S. Thornton and Pennie Mae Thornton, owners of said property, have been enriched and said property improved in the amount of $643.52, and which in the manner aforesaid constitutes a valuable improvement upon said property aforesaid."
Answers were filed by the Thorntons and Betty Jo Kimbrell, testimony was taken before the court below as a result of which the lower court entered a final decree determining that the construction company had a lien upon the lands of the Thorntons and ordered so much of the property sold as should be necessary to satisfy the amount of said lien. The only basis set forth for decreeing a lien against the premises is found in paragraph 3 and reads as follows:

*98 "That the plaintiff has improved the real property owned by the defendants, E.S. Thornton and Pennie Mae Thornton, said property being described in the Amended Complaint and hereinafter described in this Decree, in the manner in which the defendant, E.S. Thornton, authorized the defendants, LeRoy Kimbrell and Betty Jo Kimbrell, to have done, which improvements have enhanced the value of said real property in the amount due the plaintiff and the defendants, E.S. Thornton and Pennie Mae Thornton, have received the benefits of said improvements, and the plaintiff is entitled to the balance due him for said improvements, as hereinafter stated and the plaintiff is entitled to a lien on the hereinafter described real property in order to secure payment of said sum."
The remainder of the decree concerns itself with the mechanics of its enforcement and is not material to the question here decided.
The construction company relies upon Jones v. Carpenter, 90 Fla. 407, 106 So. 127, 43 A.L.R. 1409; Foster v. Thornton, 131 Fla. 277, 179 So. 882; Lockett v. Robinson, 31 Fla. 134, 12 So. 649, 20 L.R.A. 67, and similar cases to sustain the decree of the lower court. We find no similarity whatever between either the facts or the principles of law involved in those cases and the instant litigation. In Jones v. Carpenter, for example, Carpenter, the president of a corporation, had unlawfully used the funds of the corporation to pay for improvements upon his homestead. Thereafter, and after he had become insolvent, the corporation brought an action seeking a decree impressing an equitable lien upon the property so improved for the amount of the money wrongfully taken from the corporation. The corporation had no lien under any applicable statute for the amount wrongfully taken by the president. There we expressly pointed out such fact, stating [90 Fla. 407, 106 So. 128]:
"Appellant is not within any of the classes enumerated in sections 3496 and 3499 [F.S.A. § 85.03] of the R.G.S. of Florida providing for statutory liens in certain cases, and in fact the parties who furnished the materials and performed the labor in question have been compensated out of the funds of the bread company, so any claim of appellant on the basis of a statutory lien, if there be such claim, is without merit; but the doctrine of equitable liens would never have come into existence if it were true that one who claims such a lien must first show a lien at law. Equitable liens become necessary on account of the absence of similar remedies at law. Burdon Central Sugar Refining Co. v. Ferris Sugar Mfg. Co. [5 Cir.], 78 F. 417. The showing is ample to have granted the relief provided under these two sections if it had been sought by such as come within the classes so enumerated."
In that case this Court recognized the principle that equitable liens arise from either a written contract which shows an intention to charge some particular property with a debt or obligation or is declared by a court of equity out of general consideration of right and justice as applied to the relation of the parties and the circumstances of their dealings in the particular case. Foster v. Thornton and Lockett v. Robinson bear no similarity to the present case. Nor, on the facts, does Palmer v. Edwards, Fla., 51 So.2d 495.
In the case now before us the construction company seems to rely upon some vague theory that because the Kimbrells led it to believe that they, the Kimbrells, owned the land upon which the improvements were made, when such was not the fact, that such representation in some way creates a situation entitling it to an equitable lien. This argument is obviously unsound. Neither the complaint nor the evidence establishes that if such representations by the Kimbrells were untrue, any legal injury has been suffered by the construction company. Had the Kimbrells actually been the owners of the land as they allegedly said, the construction company in order to enforce its lien would have been required to have foreclosed it within the *99 one year period provided by Section 84.21, F.S. 1951, F.S.A. Inasmuch as it conclusively appears from the record in this case that the last work was performed on September 7, 1951, the claim of lien was filed within three months thereafter, Section 84.16, F.S. 1951, F.S.A., and the complaint in this cause was not filed until September 1, 1953 (nearly two years later), the construction company did not have any lien on the premises at the time of the institution of the action. Under the express provisions of Section 84.23, F.S. 1951, F.S.A., such failure to institute action within the one year period "discharges" the lien.
Moreover, if the complaint stated any facts which would have entitled the plaintiff to relief, it was for the foreclosure of a mechanic's lien under the statute. If, as alleged in the complaint, the Thorntons had knowledge of what was going on, the Kimbrells were simply their agents and the construction company was entitled to a lien under the statute (Chapter 84, supra) regardless of the fact that actual title was not in the Kimbrells. "If the owner of lands stands by and allows another who is in possession of the land to represent that he is the owner, and on the faith of such representation obtain materials for the construction of a house upon the land, the owner will not be allowed to reap the benefits of the fraud he has permitted but his property, will be subjected to a lien for the materials so obtained. And so, if the owner stands by and induces a mechanic or materialman to give credit to another as the owner, he cannot defeat the lien therefor by claiming ownership." 2 Jones on Liens (3rd Ed. 1914) p. 450, sec. 1256. In addition, it clearly appears that the construction company by filing its claim of lien clearly intended to pursue its remedy and claim its lien under the mechanic's lien law, absent which, it would have had no lien. The case must therefore be disposed of on that theory.
In the case of Bowery v. Babbit, 99 Fla. 1151, 1163, 1164, 128 So. 801, 806, 807, we held that the provision of the mechanic's lien law fixing the time within which suits must be instituted to enforce the lien was the essence of the right to maintain the action and that in such event it was essential for the plaintiff to show that the suit was commenced within the time. We said, "In other words, when the right and the remedy are created by the same statute, the limitations of the remedy are treated as limitations of the right." In the concluding paragraph in that case we stated:
"The court having found as a fact that intervener's suit was not brought within twelve months from the completion of the work and the furnishing of materials, it follows that intervener not only lost his right to enforce the lien, but that he lost the lien itself. He is in the position of having failed to establish the existence of a lien at the time of the institution of the suit, and his bill was properly dismissed."
The appellee argues "that the peculiar circumstances of the case were the facts that after the lien was filed pursuant to said Chapter 84, * * *, the appellants, LeRoy Kimbrell and Betty Jo Kimbrell, made payments to the appellee, and led the appellee to believe that it was not necessary for him to file suit to foreclose his lien," therefore, "in line with the opinion of this Court in Lockett v. Robinson above, was entitled to go into equity to subject the property which he had emproved regardless of who was the actual owner, to an equitable lien in order to recover the amount due him for the improvements he made to said property." This argument is wholly without merit. The statute plainly requires that action be commenced within one year else the lien is discharged.
Reversed with directions to dismiss the complaint.
MATHEWS, C.J., and THOMAS, HOBSON and ROBERTS, JJ., concur.