221 So.2d 145 (1969)
CRANE CO., an Illinois Corporation, Petitioner,
v.
Martin FINE, J.I. Kislak and R.W. Johnson, D/B/a Parks Towers Associates, Ltd., Arkin Building Corp., a Florida Corporation, the First National Bank of Miami, a Banking Corporation, and the Travelers Indemnity Company, a Connecticut Corporation, Respondents.
No. 37748.
Supreme Court of Florida.
April 2, 1969.
*146 Karl V. Hart, of Shutts & Bowen, Miami, for petitioner.
Gerald M. Higier, of Meyer, Weiss, Rose & Arkin, Miami Beach, for respondents.
Eugene C. Heiman, of Heiman & Crary, Miami, as amicus curiae.
ROBERTS, Justice.
This cause is before the court on direct-conflict certiorari to review the decision of the District Court of Appeal, Third District, in Fine v. Crane Co., Fla.App. 1968, 211 So.2d 219.
The facts of the case as summarized by the appellate court in its decision are substantially as follows: The petitioner, as plaintiff below, filed suit to foreclose a materialman's lien in the amount of some $4,400.00 on account of materials specially fabricated by it on the order of the plumbing subcontractor and incorporated in a building being constructed under a general contract between the defendant-owner of the land and the defendant-general contractor, as joint venturers. Thereafter, the plumbing subcontractor became insolvent and abandoned the plumbing job, which was then *147 taken over and completed by the general contractor. At the time of the abondonment by the plumbing subcontractor, the general contractor was holding funds (some $15,000.00) due the plumbing subcontractor for labor and materials furnished to the job under the plumbing subcontract but not paid for by the general contractor under a percentage hold-back clause in the construction loan agreement. The plaintiff's notice of intention to claim a lien was not filed within 45 days of the date that it supplied the materials nor was its claim of lien filed within 90 days of that date. Its suit prayed for alternative relief in the form of an equitable lien, for recovery against the surety on the performance bond, and for a personal judgment against the defendant joint venturers. The trial court entered summary judgment for the plaintiff, and the appellate court reversed.
As the basis for its petition here, the petitioner contends that the appellate court's decision is in direct conflict with numerous decisions of this court respecting equitable liens and with the decision of the District Court of Appeal, Second District, in Tarlow v. Helmholtz, Fla.App. 1967, 198 So.2d 109, respecting the time limit within which a notice of intention to claim a lien may be timely filed. Because of an apparent conflict with decisions concerning the right of the plaintiff to seek the remedy of an equitable lien, we issued the writ.
In disposing of the plaintiff's claim based on the remedy of an equitable lien, the appellate court adverted to the rule that equity will give relief to one who supplies materials that are incorporated in a building to the benefit of the owners and with their knowledge and consent, but concluded that
"This salutary principle has no application in the instant case, however. Plaintiff, who has failed by its own neglect to perfect its statutory rights, may nevertheless seek redress through other available legal remedies. The additional contingency that in such a situation the owner may be forced to pay twice for the same improvement forecloses the possibility that equity will aid the appellee here." Fine v. Crane Co., supra, 211 So.2d at p. 221.
It is not clear whether the appellate court denied the plaintiff's prayer for an equitable lien on the ground that plaintiff had shown no special equities to support such a lien, or on the ground that plaintiff, having sought a lien under the Mechanics' Lien Law, was precluded from seeking also an equitable lien. In their brief filed here, the defendant-respondents argue both grounds in support of the appellate court's decision. Cited in support of the latter ground are the decisions of this court in Kimbrell v. Fink, Fla. 1955, 78 So.2d 96, and Blanton v. Young, Fla. 1955, 80 So.2d 351. Insofar as these decisions may be interpreted as holding that one who is within the purview of the Mechanics' Lien Law is limited to his statutory lien thereunder and is not entitled to seek an equitable lien, they are in direct conflict with Palmer v. Edwards, Fla. 1951, 51 So.2d 495; Green v. Putnam, Fla. 1957, 93 So.2d 378; Tucker v. Prevatt Buildings, Inc., Fla.App.1st 1959, 116 So.2d 437, 438; and Dewing v. Davis, Fla.App.2d 1960, 117 So.2d 747. See also Wood v. Wilson, Fla. 1955, 84 So.2d 32, in which we noted that in the absence of special or peculiar equities a suit to enforce a materialman's or mechanic's lien must be brought within the statutory time limit, citing Kimbrell v. Fink, supra, 78 So.2d 96. To set this matter at rest, we re-affirm the rule stated in Green v. Putnam, supra, 93 So.2d 378, that
"* * * one who has performed services or furnished materials in the improvement of real property is not limited to proceeding under the mechanics' lien law, but may proceed to establish an equitable lien on the property in question."
We have not overlooked the decision in Merritt v. Unkefer, Fla., Opinion on Rehearing Granted filed February 19, 1969, reversing Unkefer v. Merritt, *148 Fla.App. 1968, 207 So.2d 726. In that case a majority of the court was of the opinion that the allegations of the complaint were insufficient to support an equitable lien. The facts of the case sub judice, as recounted hereafter, are entirely different and, in our opinion, are ample to support the trial judge's conclusion that the plaintiff had a right to an equitable lien on the $15,000.00 "hold-back" fund.
Jurisdiction having attached because of the direct conflict noted above, we may consider the other questions here argued by the parties, namely, (1) whether the record showed special or peculiar equities in plaintiff's favor sufficient to support an equitable lien, as found by the trial judge; and (2) whether the appellate court erred in its interpretation of § 84.061(2) (a), Fla. Stat. 1965 (§ 713.06(2) (a), Fla. Stat. 1967, F.S.A.), respecting the time limit within which notice of furnishing materials or services must be given to the owner by a materialman or subcontractor not in privity with the owner as a pre-requisite to perfecting a statutory lien under the Mechanics' Lien Law. For the reasons stated hereafter, both questions must be answered in the affirmative.
The principles of law applicable to a determination of the equitable-lien question have been stated as follows: An equitable lien is simply a right of a special nature over a particular property that may arise from a written contract which shows an intention to charge the particular property with a debt or obligation, or it may be declared by a court of equity out of a general consideration of right and justice as applied to the relations of the parties and the circumstances of their dealings in the particular case. Jones v. Carpenter, 1925, 90 Fla. 407, 106 So. 127, 43 A.L.R. 1409. It is a remedial tool used by chancery to prevent inequity or unjust enrichment of one party as against another. Green v. Putnam, supra, 93 So.2d 378. It is particularly appropriate in a situation in which the primary debtor has become insolvent, see Jones v. Carpenter, supra, 106 So. 127; Palmer v. Edwards, supra, 51 So.2d 495; Tucker v. Prevatt Builders, Inc., supra, 116 So.2d 437, 438; or has parted with the res that in right and justice should be held answerable for the claim made against it. See Dewing v. Davis, supra, 117 So.2d 747; Industrial Supply Corp. v. Lee, Fla. 1950, 48 So.2d 285.
The "particular property" in which the plaintiff had "a right of a special nature," according to the trial judge, was the $15,000.00 fund due and owing the plumbing subcontractor for work already performed at the time it abandoned the plumbing subcontract (in November of 1965). This fund was still in the hands of the general contractor at the time (in December of 1965) the plaintiff notified the owner and the general contractor that it had furnished materials to the job in September of 1965 under the plumbing subcontract. The notice was filed by plaintiff long before the completion of the construction and the time for filing the general contractor's final (and, in fact, only) affidavit as to unpaid lienors (in April of 1966); and many progress payments were thereafter made by the owner to the contractor. The plumbing subcontractor with whom plaintiff was in privity was insolvent. There can be no doubt that plaintiff  as well as any other materialmen whose materials were incorporated in the improvement under the plumbing subcontract and who, like plaintiff, remained unpaid at the time the plumbing subcontractor abandoned the contract  had "a right of a special nature" in the funds due and owing on account of materials supplied by them to the improvement. As between the owner and the contractor in their capacity as joint venturers, on the one hand, and the plaintiff on the other hand, the right and justice of the matter is plain. The former have no right, title or interest in the $15,000.00 fund except as security for the payment of the plumbing subcontractor's materialmen who, like plaintiff, remained unpaid at the time of its abandonment of the plumbing subcontract, or possibly as security for any damages sustained by *149 reason of the breach of the plumbing subcontract. No contention is made that any other lienor furnishing labor or materials under the plumbing subcontract remains unpaid or claims any portion of the $15,000.00 hold-back fund  in fact, the plaintiff states that the contrary is true. Assuming arguendo that the owner-contractor joint venturers had the right to apply the $15,000.00 hold-back fund to any damages sustained by them by reason of the breach of the plumbing subcontract, there is nothing in the record to show that they were unable to complete the plumbing work for the amount ($25,000.00) payable under the plumbing subcontract for the work remaining to be done thereunder. In fact, from answers to interrogatories made by them, it is fair to assume that the cost of completion did not exceed this amount. In these circumstances, it is inescapable that to allow the owner-contractor joint venturer to defeat the plaintiff's claim to share in the $15,000.00 hold-back fund would unjustly enrich them at the expense of the plaintiff. And it would be especially inequitable in view of the fact that the plumbing subcontractor with whom plaintiff is in privity is insolvent. While the appellate court in the decision here reviewed observed that plaintiff "may nevertheless seek redress through other available legal remedies", the relevancy of this statement is not immediately apparent when it is considered that the plumbing subcontractor is insolvent and that the appellate court held also in the decision here reviewed that the plaintiff had no cause of action against the surety on the performance bond nor against the owner-contractor joint venturers on either a quasi-contractual or contractual basis.
Nor can we agree with the appellate court that the declaring of an equitable lien will, in these circumstances, result in the owner's being "forced to pay twice for the same improvement." In support of the court's statement it is argued by the defendant-respondents that it is the general practice in the construction industry for the general contractor to pay a subcontractor on a monthly basis for labor and materials supplied to the job during the preceding month; and that if it is possible for an unpaid materialman to obtain an equitable lien against the improved property after the subcontractor with whom he is in privity has been paid in full, the owner or contractor "could never be certain that the work done had actually been paid for, with the specter always present of a claimant appearing at the end of a job demanding payment or threatening an equitable lien." The answer to this contention and to the statement of the appellate court, quoted above, is that the instant case is not one in which a materialman not in privity with the general contractor or the owner stands idly by and fails to file his cautionary notice until after the subcontractor with whom he is in privity has completed his subcontract and been paid in full  either in a progress payment or on final payment. Ordinarily, the only right or interest that such a materialman has in the funds payable under the direct contract by the owner  and, in the circumstances specified by the statute, in the property improved by his materials  arises out of the provisions of the Mechanics' Lien Law, Ch. 84, Fla. Stat. 1965 (Ch. 713, Fla. Stat. 1967, F.S.A.); and, in the absence of special or peculiar equities, his failure to perfect his statutory right thereunder leaves him only his remedies at law. We emphasize that this opinion is not to be interpreted as holding that a materialman is entitled to seek an equitable lien merely because his materials are incorporated in the improvement. We hold only that, because of the special and peculiar equities shown by the record in this particular case, the plaintiff should not be foreclosed from seeking an equitable lien merely because he was entitled to but failed to perfect his statutory materialman's lien.
The second question that the parties have presented and argued here has to do with the interpretation of § 84.061(2) (a), Fla. Stat. 1965 (carried forward as § 713.06(2) *150 (a), Fla. Stat. 1967, F.S.A.). This subsection is quoted in full in the decision of the appellate court here reviewed. In substance, it provides for the notice to be served by a materialman or subcontractor on the owner, notifying him of the materials or services furnished or to be furnished to the improvement and describing the real property to be improved. It states that this notice is a pre-requisite to perfecting a lien and recording a claim of lien but does not itself constitute a lien on the property nor dispense with the necessity of recording the claim of lien. The time within which this notice is to be served is prescribed as follows: 
"This notice must be served before commencing or not later than forty-five days from commencing to furnish his services or materials but in any event before the date of furnishing the affidavit under subsection (3) (d)1., of this section, or abandonment, whichever shall occur first." Sec. 84.061(2) (a), Fla. Stat. 1965.
In the decision here reviewed the appellate court held that the plaintiff's failure to serve the notice on the owner within 45 days of commencing to furnish the materials barred its claim for a statutory lien, citing Tarlow v. Helmholtz, Fla.App. 1967, 198 So.2d 109; Babe's Plumbing, Inc. v. Maier, Fla.App. 1966, 194 So.2d 666; and Stancil v. Gardner, Fla.App. 1966, 192 So.2d 340. These cases are distinguishable on their facts from the instant case. In Tarlow and Babe's Plumbing, Inc., no notice whatsoever was given by the materialman to the owner prior to recording the claim of lien sued upon. In Stancil, the notice was given after the owner had made the final payment to the contractor. Additionally, in Tarlow the rights of the parties accrued and were determined under the statute as it existed prior to the amendment made by Ch. 65-456, Laws of 1965, to § 84.061(3) (c), Fla. Stat. 1963. The paragraphs added by the 1965 amendment  paragraphs 3 and 4 of Subsection (3) (c)  deal specifically with progress payments that may be made by the owner directly to materialmen and subcontractors. Paragraph 3 authorizes him to pay directly those persons or firms listed on the contractor's affidavit and to deduct the amounts so paid from the amount due the contractor. Paragraph 4 establishes the priorities for such progress payments as follows: It requires the owner to pay, first, "all lienors giving notice and lienors listed in such affidavit whose time for serving such notice has not expired." If, after the payment in full of such lienors, there still remains a balance due the contractor on the progress payment,
"* * * any of said persons who failed to serve timely notice shall be paid in full or pro rata according to the amounts of their claims to the extent of such balance due the contractor; provided, this shall not be construed to permit any claim or demand whatsoever by said persons failing to serve timely notice against the owner." Sec. 84.061(3) (c)4, Fla. Stat. 1965 (Sec. 713.06(3) (c)4, Fla. Stat. 1967, F.S.A.). (Italics supplied.)
As noted above, the plaintiff had served notice on the owner long before the improvement was completed, and the owner made many progress payments to the contractor after receipt of plaintiff's notice. The appellate court had the view, however, that the italicized clause required plaintiff to serve the notice to the owner within 45 days of commencing to furnish the materials in order to participate in a progress payment, and therefore it could not recover under a statutory lien theory. We do not so interpret the statute.
(We note, parenthetically, that the instant suit arose under the 1965 Mechanics' Lien Law, Ch. 84, Fla. Stat. 1965, so that references are made to the 1965 Act; however, the provisions referred to herein have been transferred without change to corresponding sections and subsections of Ch. 713, Fla. Stat. 1967, F.S.A. It should also be noted that we have used the word "lienor" as it is used in the statute, § 84.011(10), Fla. Stat. 1965, that is, to refer to *151 a person or firm who is entitled to the benefits of the Mechanics' Lien Law, regardless of whether or not any steps toward perfecting a lien have been taken.)
This court has previously interpreted the section of the Mechanics' Lien Law providing for a "cautionary notice" to the owner as it existed prior to the 1963 revision. This section  § 84.04(1)(a), Fla. Stat. 1951  prescribed the time within which such notice should be filed as follows: 
"* * * any lienor, or any prospective lienor may, before beginning, or within thirty days after beginning but not later than the day of completing his labor or services or his furnishing of materials, give to the owner a written notice of intention to claim a lien, hereinafter called a `notice'."
In Sheffield-Briggs Steel Products, Inc. v. Ace Concrete Service Co., Fla. 1953, 63 So.2d 924, we held that the notice referred to in § 84.04(1)(a), supra, must be filed within thirty days after beginning the furnishing of materials or services regardless of whether the furnishing of the materials or services had been completed. It affirmatively appears, however, that the limited 30-day cautionary notice was intended only to provide for a top-priority lien and not as a limitation on a lienor's filing other notices in order to participate in progress payments and the final payment. This is made clear from our quotations from the notes of the National Conference of Commissioners on Uniform State Law, from whose model Act the Florida Mechanics' Lien Law then in effect had been adopted, as follows: 
"Though he is not required to do so, the owner may, as the work progresses, make payments to * * * claimants who give that notice within the limited time provided enough money is in hand to satisfy laborers and lienors previously giving notice within the limited time; and he may make such progress payments to lien claimants who give such notice after the limited time or who do not give such notice, provided he retains sufficient funds to cover amounts due all laborers and amounts included in notices previously or thereafter given. 9 U.L.A. 486." (Emphasis supplied.)
The notes under paragraph 4 of the Uniform Act (Sec. 84.04, Fla. Stat. 1951) which we quoted are relevant here: 
"* * * facility is given to lien claimants within thirty days from the time they begin the furnishing of the materials or services but before completing their services to notify the owner of the real property of the amount and nature of the claim in a form of notice set forth in the section, said form being sufficiently informative to apprise the owner of his responsibilities. The same sort of notice may be given the owner after the limited time mentioned but those giving notice within the limited time are given priority in declaration of liens over those who give notice after the limited time and those who rely solely on the filing of a formal claim of lien. 9 U.L.S. 498." (Emphasis supplied.)
There are some differences in the Mechanics' Lien Law as originally adopted and as revised in 1963. Under the present Act, instead of withholding from progress payments and the final payment an amount sufficient to cover lienors who had given notice at the time of such payment, the owner is now required to make payments directly to "each lienor giving notice prior to the time of said payment," Sec. 84.061(3)(c) Fla. Stat. 1965, after giving the contractor ten days' notice of his intention to do so, Sec. 84.061(3) (g), Fla. Stat. 1965  presumably to make sure that the bill is due and owing as well as to avoid the risk of double payment. Under the present Act, a Claim of Lien cannot be recorded until after the notice has been given the owner; whereas, under the former Act, no cautionary notice was necessary in order to record and foreclose a Claim of Lien against the unpaid balance *152 of the contract price or that portion that was not properly paid. See Roberts v. Lesser, Fla. 1957, 96 So.2d 222, 223. However, under both the old and the new Acts, no notice to the owner is necessary for a lienor to participate in the final payment, since the contractor is required to list all unpaid lienors in his final-payment affidavit, whether or not such notice has been given, § 84.061(3)(d)2, Fla. Stat. 1965; and, as noted above, if a progress-payment affidavit from the contractor is required by the owner, a lienor listed therein may participate even though he gave no notice, provided a balance remains after the payment of lienors who have given notice. Sec. 84.061(3)(c)4, Fla. Stat. 1965, supra. And there can be no doubt that the fundamental purpose of the Act remains the same, that is, to protect those whose materials, labor and skills improve the land of others by providing a plan by which such persons or firms may receive their fair share of the moneys payable by the owner to the general contractor under the direct contract  or, in circumstances specified by the statute, may record and foreclose a Claim of Lien against the property so improved.
It is our duty to construe this statute liberally "so as to afford the laborers and materialmen the greatest protection compatible with justice and equity." Hendry Lumber Co. v. Bryant, 1939, 138 Fla. 485, 189 So. 710. In the light of its benevolent purpose, and in the absence of an express direction to the contrary, we think that the 45-day notice provided for in the 1963 Act must have been intended by the Legislature to have the same force and effect as the 30-day notice provided for in the former Act  that is, as establishing a "priority" category for lienors who give notice to the owner within 45 days of beginning to furnish materials or services; and that, as under the former Act, lienors may give notice to the owner after the expiration of the 45-day period and participate in full, or pro rata, to the extent of such sums as remain due from the owner to the contractor after the payment in full of the "priority" lienors. The notice must, of course, be given to the owner within the limitations period prescribed for the recording of a Claim of Lien and, for obvious reasons, before the owner has paid out (either in a progress payment or the final payment) that portion of the sums due under the direct contract to which a lienor would be entitled. For example, a materialman who is in privity only with a subcontractor must give notice to the owner before his subcontractor has been paid in full in order to participate in a progress or a final payment.
The appellate court's interpretation of the proviso italicized in the quotation, supra  "provided, this shall not be construed to permit any claim or demand whatsoever by said persons failing to serve timely notice against the owner," § 84.061 (3)(c)4  that is, as requiring the general contractor to list in his progress-payment and final-payment affidavits only those persons or firms who had given the 45-day notice to the owner, is in direct conflict with the statutory provisions as to the contractor's final payment affidavit, Subsections (d)1 and 2 of § 84.061(3), Fla. Stat. 1965. There can be no doubt that, under these provisions of the statute, the contractor is required to list all outstanding bills for labor, services or materials regardless of whether the lienors have given notice to the owner. The lienors giving notice have priority; however, it is expressly provided that "Leinors listed in said affidavit not giving notice may be paid nevertheless." Sec. 84.061(3)(d)2, supra. The progress-payment affidavit, if one is required by the owner, must be the same as that prescribed for the final payment. Sec. 84.061(3)(c)1, supra. And the 1965 amendments to the Act, paragraphs 3 and 4 of § 84.061(3)(c), supra, make doubly clear that those lienors who have given no notice at all, or whose notice was not filed within the limited 45-day period prescribed for a "priority" lien, have a right to participate in a progress payment if a balance *153 remains after the payment in full of the "priority" lienors. We cannot ascribe to the Legislature an intent to abrogate completely these provisions of the Act, and we think the appellate court erred in so interpreting the proviso in question.
In All State Pipe Supply Co. v. McNair, Fla. 1956, 89 So.2d 774, we pointed out that a lienor who neglects to give a notice to the owner not only loses the benefit of a "priority of position" that he could have acquired by giving the notice and limits himself to his pro rata share of the sums due by the owner on final payment, but also runs the risk "of the contractor making, and the owner relying in good faith on, a false sworn statement in which the contractor shows no sums due to any materialman or subcontractor." Thus, although no notice was at that time required as a pre-requisite to recording a Claim of Lien, the net effect was the same: The failure to give notice coupled with the contractor's negligent or willful omission results in the loss of his lien. And we think that the proviso in question was intended only to provide the same protection to the owner in making progress payments as is provided for the final payment  that is, the owner has the right to rely on the progress-payment affidavit, if one is required, and cannot be charged with making an improper payment as to a lienor who is neither listed in the contractor's progress-payment affidavit nor has given notice to the owner prior to the date of the progress payment. Also, as noted above, to support a Claim of Lien, the notice must be given before the owner has paid out that portion of the sums due under the direct contract to which a lienor would be entitled. To hold that the Legislature intended to establish a 45-day limitations period within which the initial step must be taken in order to participate in progress payments and the final payment and to perfect a Claim of Lien or else be forever barred, is not only in direct conflict with the other provisions of the Act referred to above but is also grossly inconsistent with the purpose of the Act to protect the suppliers of materials and services to an improvement. We think the appellate court erred in so holding.
For the reasons stated, the decision here reviewed should be and it is hereby quashed, and remanded for further proceedings not inconsistent with this opinion.
It is so ordered.
ERVIN, C.J., and THORNAL, ADKINS and CALDWELL (Retired), JJ., concur.