371 So.2d 559 (1979)
TUTTLE/WHITE CONSTRUCTORS, INC., and Federal Insurance Company, Appellants,
v.
HUGHES SUPPLY, INC., Suncoast Village, Inc., et al., Appellees.
No. 76-2747.
District Court of Appeal of Florida, Fourth District.
May 31, 1979.
*561 R.L. Russell of Van Den Berg, Gay & Burke, Orlando, for appellants.
James M. Corrigan of Maguire, Voorhis & Wells, Orlando, for appellee Hughes Supply, Inc.
CROSS, Judge.
Tuttle/White Constructors, Inc., and its surety, Federal Insurance Company, appeal final judgment entered in favor of Hughes Supply, Inc., in an action to recover payment for materials supplied to a construction project. We reverse.
Suncoast Village was conceived as a multi-building office, motel, restaurant and parking complex in St. Petersburg, Pinellas County, Florida. Suncoast Village, Inc. (hereinafter Suncoast), as owner, entered into a contract with Tuttle/White Constructors, Inc. (hereinafter Tuttle/White), as prime contractor, for construction of the Suncoast Village complex. Tuttle/White entered into a subcontract with Murphy Electric Company of Florida (hereinafter Murphy), under which Murphy contracted to perform the electrical work on the project for the sum of $298,109. Hughes Supply, Inc. (hereinafter Hughes), orally agreed to furnish necessary electrical materials to Murphy for use in Suncoast Village.
Hughes first began to supply materials to Murphy on June 25, 1974. It was not until January 11, 1975, that Hughes served a Notice to Owner to inform Suncoast that it was acting as materialman for Murphy. By this time Murphy had received progress payments totaling $254,008.80. On January 24, 1975, Hughes requested and obtained from Tuttle/White a letter guaranteeing payment for materials thereafter supplied by Hughes to Murphy. Three days later, on January 27, 1975, as a result of Murphy's insolvency, Tuttle/White sent to Murphy a notice terminating their respective contract on the Suncoast Village project. Hughes received a copy of this notice of termination.
Tuttle/White then engaged Racecon, Inc. to complete the balance of the electrical work formerly covered by Murphy's subcontract. Racecon successfully performed its obligations, and allegedly received $33,299.45 in payment from Tuttle/White. Tuttle/White allegedly expended an additional $4,840.13 for materials to aid in completion of the electrical work performed by Racecon.
On April 29, 1975 Hughes recorded its claim of lien and demanded payment in the amount of $32,060.06 for materials supplied to Murphy for the Suncoast Village project. Tuttle/White refused payment. Suit was then instituted by Hughes in Pinellas County against Tuttle/White, Suncoast and Murphy. On motion by all parties venue was changed to Orange County, Florida. Meanwhile, Tuttle/White arranged to post a lien transfer bond in the amount of $37,930.87 with Federal Insurance Company as surety. Subsequently, Hughes filed its amended complaint joining Federal Insurance Company as a party defendant, and sought to foreclose its lien against the transfer bond. Thereafter, final judgment was entered in favor of Hughes against all defendants with Hughes being awarded the sum of $41,730.08. Tuttle/White and Federal petitioned for rehearing, which was denied. This appeal then followed.
Section 713.06(1), Florida Statutes (1977), provides that persons not in privity with the owner may establish a lien on the owner's real property to the extent necessary to guarantee payment for labor, services or materials furnished in accordance with contract. Subsection (2) of Section 713.06 requires that the prospective lienor serve a notice on the owner setting forth certain specified information either (1) before commencing to furnish services or materials; (2) not later than 45 days from commencing to furnish services or materials; or (3) any time before the furnishing of the contractor's affidavit under Section 713.06(3)(d)(1), Florida Statutes, or abandonment, whichever shall first occur. As construed, this statute requires the filing of notice to owner not later than 45 days after commencing to furnish services or materials. Bard Manufacturing Co. v. Albert & Jamerson Bldg. Supply Corp., 212 So.2d 13 (Fla. 4th DCA 1968).
*562 However, the failure of a prospective lienor to file notice to owner within forty-five days does not act as an absolute bar to recovery. Konsler Steel Co. v. Partin, 356 So.2d 264 (Fla. 1978); Moretrench Corp. v. Bronson & Veal Enterprises, Inc., 262 So.2d 206 (Fla. 4th DCA 1972). The case of Crane Co. v. Fine, 221 So.2d 145 (Fla. 1969), recognized the right of a supplier of services or materials to proceed to establish an equitable lien. Under the holding in Crane, lienors who file notice after the forty-five day limit still may participate either in full or pro rata to the extent funds remain available after payment has been made to "priority" lienors. Moretrench Corp. v. Bronson & Veal Enterprises, Inc., supra. Priority lienors are those lienors who either have given proper notice or whose time for serving such notice has not yet expired. Section 713.06(3)(c)(4), Florida Statutes. In order to participate, the lienor must show an uncompleted contract at the time that the owner received notice by service of a late notice of intention or service of the claim of lien. Torres v. MacIntyre, 334 So.2d 59 (Fla. 3d DCA 1976). A contract remains "uncompleted" when funds remain due under a contract to which the lienor would be entitled.
Appellee-Hughes claims it is entitled to participate in any progress payments made by appellant after Hughes filed its tardy notice.
Proper payment of progress payments is governed by Section 713.06(3)(c)(1), Florida Statutes, which provides:
The owner shall pay or cause to be paid ... the sum then due to each lienor giving notice prior to the time of said payment.
However, the appellee does not fall within the above quoted provision. Even though appellee's notice was given prior to the making of certain progress payments under the primary direct contract, it is not entitled to participate since the term "lienor giving notice" is specifically defined as those lienors who have duly served a notice to owner. Section 713.01(19), Florida Statutes. Since appellee's notice was not served within the statutory period, such notice cannot be said to be duly served. Any right of appellee to participate in progress payments must be governed by the provisions of Section 713.06(3)(c)(4), Florida Statutes, which provides:
4. No person furnishing labor or material or both who is required to serve a notice under subsection (2)(a), and who did not serve such notice and whose time for such service has expired shall be paid because he is listed in an affidavit furnished by the contractor under this subsection until all lienors giving notice and lienors listed in such affidavit whose time for serving such notice has not expired have been paid in full. If there is a balance due the contractor after all of said lienors have been paid in full, any of said persons who failed to serve timely notice shall be paid in full or pro rata according to the amounts of their claims to the extent of such balance due the contractor; provided, this shall not be construed to permit any claim or demand whatsoever by said persons failing to serve timely notice against the owner. (Emphasis added.)
Clearly, the use of the term "shall" indicates a legislative intent that lienors, even those who have filed a late notice to owner or no notice at all be allowed to participate in progress payments before the prime contractor is to be paid. Of course, the use of an affidavit of the contractor for progress payments is strictly optional for the owner. See Connor v. Dreyer, 335 So.2d 352 (Fla. 2d DCA 1976).
The instant record is bare of any reference to the use of a progress payment affidavit. Thus, in the absence of such affidavit, Hughes would have no right to participate in progress payments because of its failure to give timely notice.
The Mechanic's Lien Statute also establishes a mechanism to facilitate payment of lienors from the final payment due to a contractor under a direct contract. Section 713.06(3)(d)(5), Florida Statutes, specifies that the owner shall retain the last *563 payment due to a contractor under a direct contract, or ten per cent of the original contract price, whichever is larger. This sum may not be disbursed to a contractor until the contractor has filed an affidavit of lienors wherein the contractor is required to list all lienors to whom an amount remains due, whether such lienors have given notice or not. Upon receipt of this affidavit, the owner is empowered, pursuant to Section 713.06(3)(d)(2), Florida Statutes, to pay all lienors from this retained fund. Section 713.06(3)(d)(2), Florida Statutes, provides:
"If the contractor's affidavit ... recites outstanding bills for labor, services or materials, the owner may, after giving the contractor at least ten days written notice pay such bills in full direct to the person or firm to whom they are due, if the balance due on a direct contract at the time the affidavit given is sufficient to pay them and lienors giving notice, and shall deduct the amount so paid from the balance due the contractor. Lienors listed in said affidavit not giving notice may be paid nevertheless." (Emphasis added.)
If the amount retained by the owner is insufficient to pay all lienors, whether they have given notice or not, the burden is placed squarely on the contractor to provide the difference by subsection (3) of Section 713.06(3)(d), Florida Statutes, which provides:
If the balance due is not sufficient to pay in full all lienors listed in the affidavit given by the contractor at that time and other lienors giving notice, the owner shall pay no money to anyone until such time as the contractor has furnished him with the difference... .
If the contractor fails to provide the difference within ten days, the owner is then required to disburse these retained funds by paying all lienors properly giving notice in full with the remainder to be distributed on a pro rata basis to the remaining lienors pursuant to Section 713.06(3)(c)(4). Once the owner has distributed the retained funds according to this plan and paid any balance remaining to the contractor, he is then relieved of any further liability under the direct contract. Section 713.06(3)(d)(5), Florida Statutes.
It is argued that the Mechanic's Lien law was enacted to place the burden on the contractor to see that all lienors known to either the owner or the contractor be paid. However, Tuttle/White argues that such an interpretation places the contractor at a disadvantage in cases such as the present one wherein a materialman or other sub-subcontractor has delayed in giving its notice to the owner until all or substantially all of the funds available under a subcontract have been disbursed. Tuttle/White argues that such persons who delay in giving notice until available funds have been disbursed should be limited in their participation to the sum remaining funded under any particular subcontract. Tuttle/White's position seems to receive some support from the caselaw.
In Crane v. Fine, supra, our supreme court was called upon to decide whether a materialman to a subcontractor, who had failed to file its notice of intention to claim lien within forty-five days or its claim of lien within ninety days, was entitled to an equitable lien on an amount remaining undistributed under a subcontract. The court felt in view of the special and peculiar equities in the case that the materialman was entitled to be paid out of the proceeds remaining undistributed under the subcontract. In discussing the effect of the forty-five-day notice to owner provision of Section 84.061,[1] Florida Statutes, the court stated:
It is our duty to construe this statute liberally "so as to afford the laborers and materialmen the greatest protection compatible with justice and equity." Hendry Lumber Co. v. Bryant, 1939, 138 Fla. 485, 189 So. 710. In the light of its benevolent purpose, and in the absence of an express direction to the contrary, we think that the 45-day notice provided for in the 1963 Act must have been intended *564 by the Legislature to have the same force and effect as the 30-day notice provided for in the former Act  that is, as establishing a "priority" category for lienors who give notice to the owner within 45 days of beginning to furnish materials or services; and that, as under the former Act, lienors may give notice to the owner after the expiration of the 45-day period and participate in full, or pro rata, to the extent of such sums as remain due from the owner to the contractor after the payment in full of the "priority" lienors. The notice must, of course, be given to the owner within the limitations period prescribed for the recording of a Claim of Lien and, for obvious reasons, before the owner has paid out (either in a progress payment or the final payment) that portion of the sums due under the direct contract to which a lienor would be entitled. For example, a materialman who is in privity only with a subcontractor must give notice to the owner before his subcontractor has been paid in full in order to participate in a progress or a final payment. (Emphasis added.)
The emphasized portion of the supreme court's opinion in Fine was relied upon by the First District Court of Appeal in Carter Sand Co., Inc. v. Baymeadows, Inc., 320 So.2d 14 (Fla. 1st DCA 1975), in holding that failure of a materialman to give notice to the owner before the subcontractor had been paid in full prevented the materialman's participation in a progress or final payment.
However, to hold that materialmen such as Hughes are completely barred from recovering payment once the amount funded under a particular subcontract has been disbursed, not only violates the express purpose of the Mechanic's Lien law, to-wit: insuring the lienor's right to receive payment, but also ignores the express language adopted in Section 713.06, Florida Statutes, which creates a fund at the conclusion of the direct contract to ensure that all lienors will receive their due. See Konsler Steel Co. v. Partin, supra. Sub judice, when Murphy defaulted after receiving $254,008 out of a total $298,109 funded under the subcontract, Tuttle/White was forced to hire a second subcontractor, Racecon, to complete the work. Racecon, because its time for filing its notice to owner had not expired, enjoyed the priority status as discussed by the supreme court in Fine. Thus, it was entitled to payment in full as a priority lienor from the funds remaining allocated under the electrical subcontract. See Alton Towers, Inc. v. Coplan Pipe and Supply Co., Inc., 262 So.2d 671 (Fla. 1972); Bill Ader, Inc. v. Maule Industries, Inc., 230 So.2d 182 (Fla. 4th DCA 1969). Hughes was relegated to receiving only a pro rata share under the subcontract due to its delay in giving its notice to owner. Hughes was limited by its inferior status as a lienor to participating only if a progress payment affidavit was required by the owner.
However, this limitation did not exist when the final payment under the direct contract was to be made. The Mechanic's Lien law is quite specific as to how and when such final payment is to be made and as to who may participate therein. Clearly, under the statute Hughes enjoyed the right to participate in the distribution of the final payment according to its status and up to the total amount due and owing provided such payment did not prejudice the right to full payment of those lienors who enjoyed priority status. Any other result would be in clear contravention of the express dictates of the statute which envisions the situation where funds remain undisbursed under any of the existing subcontracts in a multi-faceted construction project to which the primary contractor would not in equity and good conscience be entitled.
In conclusion, we note the manner in which Hughes attempted to prove at trial the amount of materials furnished on the Suncoast Village project. Before a materialman is entitled to receive payment under a mechanic's lien, there must be presented to the trial court evidence establishing that the materials were actually delivered to the project. See Beautyware Plumbing Supply Co. v. Columbiad Apartments, *565 Inc., 215 So.2d 42 (Fla. 4th DCA 1968). The presumption recognized in Section 713.01(6), Florida Statutes, relating to the incorporation of materials in the improvement project does not come into operation until after evidence sufficient to establish that such materials have been delivered to the site has been presented. American Insurance Co. v. Coley Electric Supply Co., Inc., 354 So.2d 390 (Fla. 1st DCA 1978). The burden is on the claimant to establish that such materials were actually delivered to the construction site before the benefit of the statutory presumption may be afforded the lienor. American Insurance Co. v. Coley Electric Supply Co., Inc., id. In the instant case, we are of the view that Hughes has totally failed to establish any evidence of delivery of those materials furnished to Murphy over the counter at Hughes' place of business, except for those materials which were expressly identified as being incorporated into the project after the onsite inspection by Hughes' employee.
We also note the amount of the judgment awarded by the trial court exceeds the amount of the transfer bond posted by Federal Insurance Company. The amount of the transfer bond is expressly established by statute. Section 713.24, Florida Statutes. Hughes could have petitioned to require additional security to be posted when it realized that the expenses involved in prosecuting this claim would exceed the amount of security posted, but chose not to do so. We find nothing in the statutes, however, to prevent the entry of an unsecured judgment in an amount appropriate to cover such expenses against a losing party other than the surety. A surety may not, however, be held liable for an amount in excess of the bond posted.
Therefore, the final judgment is reversed and the cause remanded to the trial court for determination of whether or not the materials supplied by Hughes were delivered to or incorporated into Suncoast Village, Hughes' priority status, the availability of monies pursuant to the provisions of Section 713.06(3)(d)(2) and (3), Florida Statutes (1977), and assessment of Hughes' damages accordingly.
Reversed and remanded.
DOWNEY, C.J., and DAUKSCH, J., concur.
NOTES
[1] Section 84.061, F.S., was subsequently renumbered Section 713.06, F.S.