394 So.2d 155 (1981)
G.L. ROYAL, Jr., and Charles F. Royal, d/b/a Charles F. Royal & Son, a Partnership, and Bob Bell Construction, Inc., Appellants,
v.
Oscar CLEMONS, d/b/a Clemons Construction Company, Appellee.
No. 79-1761.
District Court of Appeal of Florida, Fourth District.
February 4, 1981.
Rehearing Denied March 12, 1981.
*156 Richard M. Sauls, Okeechobee, for appellants.
Jeffrey C. Fulford of Adams & Hill, Orlando, for appellee.
DOWNEY, Judge.
This case involves an appeal from a final judgment foreclosing a mechanics lien and awarding appellee $51,043.15, together with interest, costs and attorney's fees.
Appellants, G.L. Royal, Jr., and Charles F. Royal, owners of certain real property in Okeechobee County, contracted with Bell Construction Company to build a shopping center on said land. Bell, as general contractor, engaged the services of appellee Oscar Clemons to perform preliminary site preparation by furnishing fill. Clemons prepared a written proposal, signed by Bell, in which Clemons agreed to "strip and haull (sic), sod & muck" and to "haul, grade and compact to specifications" the land fill material removed from borrow pits to the construction site. The proposal indicated that "[a]pproximately 40,000 yards" would be required at 73 cents per yard, for a projected estimated cost of $31,050. This figure was not definite, however, as the agreement further stated that "Upon completion of this job the final measurement will determine total cost of job."
Clemons began work on the project on December 5, 1977, and last furnished materials and services on February 6, 1978. During the course of the contract, partial payment was made to Clemons in the *157 amount of $23,479.17. The total cost of the work completed was, according to Clemons' calculation, $80,169.80. Therefore, a balance of $51,883.80 remained due. A dispute arose between the parties as to the meaning of the contract language regarding payment for services rendered. Clemons' calculations were based upon the total amount of fill removed from the borrow pits; whereas, Bell contended the determination should be made based upon the amount of fill actually compacted in place. The amount due was decidedly different depending on the method of calculation. No further payment was made to Clemons.
Clemons filed a claim of lien on April 25, 1978, and a notice to owner on or about the same date. It is undisputed that the notice to owner was untimely. Notice of commencement was not filed by the owner until June 19, 1978, and thus also exceeded the statutory time period. In July of 1978, Clemons filed his complaint seeking to foreclose his mechanics lien. A transfer bond in the amount of $61,322.29 was posted by Bell in compliance with Section 713.24, Florida Statutes (1977), thereby transferring the claim of lien from the real property to the security.
The two primary issues at trial were the validity of appellee's mechanics lien and the amount due on the contract. With regard to the latter issue, based on conflicting evidence the trial court found that the parties intended the contract price would be determined by a final measurement of the fill which appellee hauled from the borrow pit. Appellants' second point on appeal challenges these findings; there is, however, substantial competent evidence in the record to support that finding and thus we must accept it.
With regard to the mechanics lien, the trial judge stated the issue as whether the lien was valid in view of the fact appellee did not timely file his notice to owner pursuant to Section 713.06(2)(a), Florida Statutes (1977). Based on the evidence adduced the trial court found appellee had a valid mechanics lien and that the failure to file the notice to owner simply limited the lien to a fund made up of (a) monies due the general contractor at the time the notice to owner was served and/or (b) improper payments made by the owner prior to that time. Since the evidence showed there was a balance of $1,603,855 due the general contractor from the owner at the time the notice to owner was served, the trial court found there was a sufficient fund remaining in the hands of the owner to cover appellee's lien and appellee was entitled to a judgment therefor.
The appellants present a threefold challenge to the validity of the statutory mechanics lien. First, appellants contend that Section 713.06(2)(a), Florida Statutes (1977), amended by the Legislature in 1977, as reflected in Chapter 77-353, Section 5, Laws of Florida, precludes recovery on a statutory mechanics lien where the claimant untimely files a notice to owner.[1] This provision, as revised, became effective July 1, 1978, prior to the commencement of this suit. Although the notice to owner was filed before the effective date of the amended statute, appellants maintain that this court must apply the law prevailing at the time of appeal and cite a host of authority for that proposition.
While the above rule of statutory construction is often dispositive of an appellate case, that rule does not apply in this instance. In Walker & LaBerge, Inc. v. Halligan, 344 So.2d 239 (Fla. 1977), the Florida Supreme Court delineated certain standards by which a court can determine whether prospective or retroactive application of a statutory amendment is appropriate. The court reiterated the well known principle that a new law or amendment is presumed *158 to operate only prospectively in the absence of clear legislative expression to the contrary. However, retroactive application is permitted in a limited few cases where the "nature of the statutes involved was inherently procedural or affected only the measure of damages for vindication of a substantive right." 344 So.2d at 243.
It is the opinion of this court that Chapter 77-353, Section 5, Laws of Florida, the amendment which amends Section 713.06(2)(a), Florida Statutes (1977), and effectively abrogates one's right to recover on a statutory mechanics lien where the claimant untimely files the notice to owner, may not be applied retroactively. The Legislature did not incorporate within the statutory amendment a clear expression of intent for retroactive application. More importantly, the amendment alters a vested substantive right by extinguishing all form of statutory relief where the prescribed time period for filing notice to owner is not adhered to. As such, the amendment could never be the subject of retroactive application. See: Sarasota Commercial Refrigeration and Air Conditioning, Inc. v. Schooley, 381 So.2d 1141 (Fla. 2d DCA 1980).
In the alternative appellants argue that, assuming Chapter 77-353, Section 5, Laws of Florida, the amendment to Section 713.06(2)(a), Florida Statutes (1977), does not apply, appellee would nevertheless be precluded from recovery because appellee failed to timely file a notice to owner pursuant to Section 713.06(2)(a), Florida Statutes (1977). Appellant contends this leaves available as the only form of relief, recovery on an equitable lien. Relying on Crane Co. v. Fine, 221 So.2d 145 (Fla. 1969), appellants assert that an equitable lien will only be imposed where special or peculiar equities exist and, since appellee did not plead or prove this special equity, he is foreclosed from recovering under this theory.
Appellants have misconstrued the case law as applied to former Section 713.06(2)(a), Florida Statutes (1977).[2] Under this statute, late notice to owner merely affects one's status as a priority lienor. We must adhere to the pronouncement of the Florida Supreme Court in Konsler Steel Co. v. Partin, 356 So.2d 264 (Fla. 1978), wherein it stated:
In the leading case of Crane Co. v. Fine, 221 So.2d 145 (Fla. 1969), the Florida Supreme Court held that while a notice to the owner given in compliance with the time limitations provided in Section 713.06(2)(a) placed the lienor in a priority position, such a notice given after the expiration of the 45-day period could be the basis for perfecting a valid lien provided such notice was given within the requisite 90-day period and before the owner has properly paid that portion of the sums due under the direct contract to which such lienor would be entitled. (Citations omitted.) at 265.
See also Warren v. Bill Ray Construction Co., Inc., 269 So.2d 25 (Fla. 3rd DCA 1972).
Next appellants argue that the owner's failure to timely file a notice of commencement is vitiated by the appellee's dereliction in untimely filing its notice to owner. As such, appellants contend payments made by the owner before filing a notice of commencement can not be deemed "improper payments" and do not therefore comprise a fund from which the appellee can recover. However, such is not the law. Appellee's misfeasance in adhering to the statutory time for filing a notice to owner does not relieve or otherwise abrogate appellants' responsibility for timely filing a notice of commencement prior to payments made on the contract. Wool Wholesale Plumbing Supply, Inc. v. Abdo, 365 So.2d 216 (Fla. 4th DCA 1978).
Section 713.06(3)(a), Florida Statutes (1977), provides that an owner may not pay any money on account of a direct contract prior to recording the notice of commencement provided for in Section 713.13, Florida Statutes (1977), and any amount so paid shall be deemed an improper payment. The record in this case reflects appellants paid *159 over $300,000 on the contract prior to filing the owner's notice of commencement. Therefore, the payment of those funds was improper and appellee, albeit his untimely notice, was entitled to share in those improper payments despite this untimely notice to owner.
In support of appellants' contention that appellee cannot participate in any improper payments made by owner prior to appellee filing his notice to owner they cite Tarlow v. Helmholtz, 198 So.2d 109 (Fla. 2d DCA 1967). This reliance on Tarlow is unfounded. The facts show that the governing statutory subsection in Tarlow, 84.061(2)(a), Florida Statutes (1963), was interpreted by the courts as requiring strict and timely compliance with this notice to owner provision. The law was subsequently amended in 1965 to allow those who untimely filed a notice to owner to recover on a non-priority basis provided they were listed in the contractor's affidavit. § 84.061(3)(c)4, Florida Statutes (1965).
The trial judge found that appellee was entitled to recover on his lien even though the notice was untimely filed because at the time the notice was filed over $1,600,000 remained to be paid by the owner to the general contractor. That ruling may or may not be correct depending on how much of that unpaid balance is consumed by other priority lienors and by lienors who may be in the same priority position as appellee. We hold that a lien claimant not in privity, who filed an untimely notice to owner, is entitled to participate with lienors of equal priority in any improper payments made by owner and also out of any funds remaining in the hands of the owner at the time of the filing of said notice which are not consumed by other claimants having greater priority.
Finally, we note appellee's contention that he was not required to file notice to owner because his work which involved hauling, etc., brought him under Section 713.04, Florida Statutes (1977). We believe appellee's position to be erroneous. Section 713.04, by its very term, applies to subdivision improvements. The cases relied upon by appellee, Baumgartner Construction Co., Inc. v. Harrell, 364 So.2d 802 (Fla. 1st DCA 1978) and American Fire & Casualty Co. v. Davis Water Waste Industries, Inc., 377 So.2d 164 (Fla. 1979), are both cases involving subdivision improvements. The instant case does not involve a subdivision but rather a shopping center.
In view of the foregoing, the judgment appealed from is supported by the record because the funds remaining in the owner's hands when notice to owner was filed and any improper payments were sufficient to pay appellee's claim. Accordingly, the final judgment appealed from is affirmed.
HURLEY and SHARP, JJ., and G. KENDALL, Jr., Associate Judge, concur.
NOTES
[1] As amended, Chapter 77-353, Section 5, Laws of Florida, provides in pertinent part:

The notice must be served regardless of the method of payments by the owner, whether proper or improper and shall not give to the lienor serving the notice any priority over other lienors in the same category and the failure to serve the notice shall be a complete defense to payment by any person except a person with whom the lienor failing to serve the notice has a contract.
[2] It must be remembered that Section 713.06(2)(a), Florida Statutes (1977), was effective until July 1, 1978, when Chapter 77-353, Section 5, Laws of Florida, became effective.